Saturnino Vélez y su esposa Josefa Morales Ortiz, demandantes y apelantes, *v.* Santiago y José Iturregui, haciendo negocios bajo el nombre de Iturregui Hnos., demandados y apelados. Juan Cancio Ortiz, demandante y apelante, *v.* Los Mismos, demandados y apelados.

Nos. 5058 y 5059.—*Sometidos:* Diciembre 10, 1931. *Resueltos:* Febrero 1, 1933.

*E. Ortiz Romeu, L. A. García del Rosario* y *M. García González,* abogados de los apelantes; *Celestino Iriarte,* abogado de los apelados.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Estas dos apelaciones pueden ser tratadas en una opinión porque se refieren al mismo hecho, siendo la prueba común

para ambas. En el pleito que origina la primera se reclama el pago de una indemnización por la muerte de Francisco Vélez Morales, conocido por Franco Vélez, producida por un auto de carga de los demandados: y en el segundo por la muerte de la yegua en que iba montado Vélez cuando perdió la vida en ese accidente. En ambos casos las apelaciones han sido interpuestas por los respectivos demandantes.

En las dos demandas se alegó que la muerte de Franco y la de la yegua se debió única y exclusivamente a la culpa y negligencia del *chauffeur* de los demandados por conducir el auto de carga *(truck)* por el extremo izquierdo de la carretera de Carolina a Río Piedras a una velocidad exagerada, sin dar toque de bocina y sin tener el debido cuidado y circunspección. Los demandados admitieron las muertes ocurridas pero negaron negligencia por parte de su *chauffeur*.

Cinco fueron las personas que se encontraban en el sitio del accidente cuando tuvo lugar: dos peones de una carreta de bueyes que pertenecía al dueño de la yegua muerta y el *chauffeur* y dos peones que iban en el auto de carga. Los dos primeros fueron presentados como testigos por los demandantes y los otros tres lo fueron por los demandados. Los de la carreta declararon que cuando ese accidente, empezaba a obscurecer, y los otros tres, que estaba obscuro y nublado. Los cinco estuvieron contestes en que el auto de carga tenía luces y también en que la carreta no las tenía, porque según sus dos peones se les había apagado el farol de ella por lo que habían detenido la carreta para encenderlo. Puede, pues, concluirse que cuando ocurrió el accidente que motiva los dos pleitos estaba obscuro.

Por el resultado de la prueba practicada ante la corte inferior ésta estimó demostrado que estaba detenida al lado derecho de la carretera una carreta cargada con yerba; que el carretero Nerio Ramírez se hallaba debajo de la carreta encendiendo un farol y su acompañante Epifanio Ramírez se encontraba con la garrocha frente a los bueyes, en dirección para Río Piedras; que el auto de carga de los deman-

dados, guiado por el *chauffeur* Francisco Sánchez, en el cual iban como peones Nicolás Hernández y Agapito Márquez, se dirigía en dirección de Carolina a Río Piedras conduciendo cuatro metros cúbicos de arena, llevando sus luces encendidas; que el auto de carga caminaba con moderada velocidad porque iba cargado y subiendo una pequeña pendiente; que al divisar el *chauffeur* la carreta de bueyes redujo la velocidad, tocó el pito y tomó la izquierda para pasar a dicha carreta que estaba detenida, y entonces apareció ante el auto de carga, atravesándose en el camino Francisco Vélez, que iba montado en una yegua, que parece se dirigía a entrar en la finca de Cancio Ortiz; que la yegua se espantó dándole el *truck* un fuerte golpe con el tapalodo izquierdo delantero y cayeron al suelo pasándole el *truck* por encima a la yegua y al muchacho, a pesar de que el *chauffeur* trató de defenderla desviando el vehículo un poco hacia la derecha pero ocasionándoles la muerte; que el auto de carga se detuvo inmediatamente delante de la carreta, recogió a Franco y lo llevó en seguida en el mismo *truck* al pueblo de Río Piedras, donde dió cuenta a la policía.

Con respecto a los dos peones de la carreta, testigos de los demandantes, la corte inferior manifestó en la opinión que sirve de fundamento a su sentencia que dijeron ser testigos presenciales y que en declaraciones que prestaron y firmaron ante el notario público don Celestino Iriarte al día siguiente del accidente manifestaron que cuando dicho suceso ocurrió uno se hallaba frente a los bueyes y el otro encendiendo el farol, y que se dieron cuenta de lo ocurrido después del choque, no presenciando los hechos en el momento en que ocurrieron; que también existe otra declaración prestada por Nerio Ramírez ante el Juez Municipal de Río Piedras al siguiente día del accidente, que sólo signó con una cruz a pesar de que la que prestó ante el notario fué firmada, en la que manifestó que en los momentos del accidente se hallaba encendiendo el farol, cuando sintió el golpe y salió, viendo entonces la yegua en el suelo y a Franco

Vélez muerto. Y continúa diciendo la corte que si se examinaran además las declaraciones de esos dos testigos prestadas en el juicio de la causa criminal contra Francisco Sánchez se verá el esfuerzo que hacían para demostrar que habían presenciado el accidente, o sea, el momento del choque, pero que de tal cosa no ha quedado convencida la corte.

En los dos primeros motivos de esta apelación se alega que la corte inferior cometió error al admitir en evidencia la declaración escrita y jurada del testigo de los demandados, Epifanio Ramírez, que se dijo prestada ante el notario don Celestino Iriarte; y también al admitir la del testigo Nerio Ramírez que se dijo prestada ante el mismo notario.

Esas declaraciones fueron presentadas para contradecir las prestadas en el juicio por esos testigos, y dicen los apelantes que no debieron ser admitidas como evidencia porque habiendo negado los dos testigos en el juicio de estos pleitos que ellos declararan ante el dicho notario, éste debió haber prestado declaración, y no lo hizo, para demostrar que tales declaraciones eran ciertas.

Esos testigos admitieron que estuvieron en la oficina del notario, que declararon lo que en ellas se dice y que las firmaron, pero no delante del notario. En vista de esto el documento era admisible como evidencia de las manifestaciones hechas en esa ocasión; pero si algún error hubiera habido en su admisión no sería perjudicial porque declaraciones iguales prestadas ante un funcionario judicial por los mismos testigos no han sido impugnadas por los apelantes.

En el tercer motivo del recurso se alega que fué error el no permitir a los abogados de los demandantes continuar en las repreguntas del testigo de los demandados Nicolás Hernández.

Ese testigo estuvo sometido a un largo contrainterrogatorio y la corte fundándose en que se le preguntaba dos y tres veces la misma cuestión concedió cinco minutos más para repreguntas, contestando entonces los abogados de los de-

mandantes que posponían su derecho para la sesión de la tarde, por lo que la corte dió por terminado el examen del testigo.

Los abogados de los demandantes no podían por sí solos posponer el interrogatorio para otra sesión de la corte. Además, la corte tiene la facultad discrecional de dirigir el juicio y también de intervenir *motu proprio* si el examen de repreguntas es prolongado innecesariamente, por lo que no existe el error alegado.

Las conclusiones a que llegó la corte inferior relatadas al principio de esta opinión están justificadas por la transcripción de la evidencia obrante en estos autos por lo que no podemos declarar que cometiera manifiesto error al apreciarla y al resolver que no medió negligencia imputable a los demandados, como se alega en el cuarto motivo de esta apelación. No hay que olvidar que la corte inferior no dió crédito a los dos testigos de los demandantes en cuanto a haber visto el accidente en el momento en que ocurrió y que de las declaraciones de los tres testigos presenciales de los demandados aparece que la yegua que montaba Franco Vélez se atravesó súbitamente delante del auto de carga por lo que éste no pudo ser desviado lo suficiente para evitar el accidente, no habiéndose demostrado negligencia alguna del *chauffeur* de los demandados.

Los apelantes hacen referencia en su alegato a la ley de automóviles para decir que se demostró la negligencia del *chauffeur* de los demandados. Dicha ley en su artículo 12, apartado *c,* dice que todo el que manejare un vehículo de motor al acercarse a un vehículo tirado por animales o a cualquier animal que fuere montado o conducido por una persona, deberá tomar todas las precauciones razonables para evitar que los animales se asusten y si apareciere que los animales se han asustado, reducirá la velocidad y al indicárselo la persona a cargo de aquéllos, detendrá el vehículo, y, si fuere necesario, el motor. El *chauffeur* cumplió con esa disposición de la ley pues aparece de la prueba que al ver

que la yegua se asustó y se atravesó en el camino, redujo la velocidad del auto de carga (*truck*) y trató de pararlo, aunque lo súbito del hecho no le dió tiempo para ello. En cuanto al artículo 8 de la misma ley, dispone que todo automóvil que transitare por la noche llevará por lo menos dos luces blancas visibles a una distancia de por lo menos 250 pies desde el frente del vehículo. Lo que requiere ese precepto es que las luces de todo automóvil sean visibles, o sea, que puedan ser vistas a la distancia expresada. No se presentó prueba alguna de que las luces del auto de carga no fueran visibles a la distancia dicha y, por tanto, no podemos declarar que esa ley fuese infringida y constituyese negligencia de los apelados.

En vista de las conclusiones a que llegó la corte inferior por el resultado de la prueba no tuvo necesidad de resolver, y no resolvió, si existió negligencia contribuyente de Franco Vélez, por lo que es innecesario decidir el último motivo del recurso en el que se expone como error que la corte declarase con lugar la defensa de los demandados sobre negligencia contribuyente.

*Las sentencias apeladas deben ser confirmadas.*

El Juez Asociado Señor Córdova Dávila no intervino.