NICOMEDES VARCÁRCEL, en su carácter de padre con patria potestad sobre su hijo legítimo, RAMÓN VARCÁRCEL TORRES, demandante y apelante, *v.* FELICIANO HERMANOS y THE UNITED STATES CASUALTY Co., demandadas y apeladas.

No. 6747.—*Sometido:* Enero 14, 1936. *Resuelto:* Marzo 25, 1936.

*Eduardo Urrutia Martorell*, abogado del apelante; *R. Castro Fernández*, abogado de las apeladas.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este es un caso iniciado por un padre en reclamación de los daños y perjuicios que alega que causó a su hijo menor de edad el 19 de mayo de 1933 la sociedad demandada Feliciano Hermanos con una guagua de su propiedad dedicada a su negocio de hielo, siendo también responsable de los perjuicios la compañía aseguradora demandada The United States Casualty Co.

* NOTA: Véase el prefacio.

Sostuvo y sostiene el demandante que como consecuencia del accidente el menor sufrió varias lesiones entre ellas la fractura del tercio medio del muslo izquierdo, teniendo que resistir una dolorosa operación y someterse a un tratamiento largo y penoso, quedando inútil de la pierna, y que el accidente se debió a la negligencia del *chauffeur* de la guagua de la sociedad demandada al caminar por su izquierda a gran velocidad por la calle de Ernesto Cerra de Santurce, sin mirar al frente, sin dar aviso al acercarse al cruce de la calle Lucchetti, sin usar sus frenos ni desviar el vehículo al enfrentarse con el niño que caminaba en su bicicleta.

Negó la demandada Feliciano Hermanos que su empleado fuera negligente y alegó como primera defensa especial la negligencia exclusiva del menor y de su padre el demandante, y como segunda la negligencia contributoria del padre y del menor.

Fué el pleito a juicio y la corte resolvió que la prueba no revelaba ''ninguno de los actos de negligencia que alega el demandante fueron causantes del daño'', no siendo en tal virtud suficiente para sostener la demanda que declaró sin lugar sin especial condenación de costas.

Apeló el demandante, señalando y discutiendo ampliamente en su alegato dos errores cometidos a su juicio por la corte sentenciadora al apreciar la prueba y al admitir en evidencia ciertos *affidavits*.

Hemos examinado cuidadosamente la evidencia de una y otra parte. En su esencia y tratando de usar lo más que podamos las propias palabras de los testigos, es como sigue:

Nicomedes Varcárcel, el demandante, declaró que era el padre del menor lesionado Ramón, de unos diez años de edad.

Guadalupe García dijo que el niño ''venía en una bicicleta chiquita y el *chauffeur* de los Feliciano venía en la guagua por la calle Cerra y . . . no tocó bocina y el muchachito venía llegando a la orilla de la esquina y la guagua entonces sin tocar bocina y defendiéndose de los hoyos que había en la carretera cogió la otra línea que no le correspondía . . . y

le dió con el *bumper* a la bicicleta y el muchacho cayó entre medio de la rueda de alante y de atrás de la guagua, a mano izquierda, dándole con el guardalodo derecho. . . . La guagua paró instantáneamente. . . No venía a alta velocidad.''

Ana Guzmán vió ''que el niño iba montado en la bicicleta cruzando la calle Lucchetti arriba y la guagua venía cruzando la calle Cerra y cuando el niño fué a cruzar la guagua le dió con el tapalodo izquierdo del frente a la bicicleta y cayó el niño. La guagua no tocó *klaxon*.''

Tomás Cristiano declaró que ''pasaba un muchachito con una bicicleta pequeña, y cuando venía el carro de hielo le dió con la parte izquierda y quedó el muchachito debajo de la guagua con la bicicleta . . . acostado en el suelo. . . . Yo sentí *klaxon* cuando salí a la calle. No sé si fuera esa guagua u otro carro. . . . El niño iba culebreando. No alcanzaba bien los pedales. Iba por el centro mismo de la calle. Al cruzar la calle salió la guagua. La guagua paró instantáneamente.''

Pedro Jorge describe el accidente así: ''Yo ví que el Sr. Varcárcel venía montado en una bicicleta . . . y al llegar a la esquina sentí el golpe, ví que la guagua 'tan' le dió, cayendo la bicicleta así al lado de la guagua, pasando la rueda de la izquierda por encima del niño, quedando (éste) como a mitad de la rueda delantera y la trasera.'' La guagua ''venía ligero, como a veinte o veinte y cinco millas.''

Fué llamado entonces a declarar el niño lesionado. Dijo: ''Cuando yo venía por la calle Lucchetti en una bicicleta de pedal al llegar a la esquina venía la guagua de Feliciano y me tumbó la bicicleta con el *bumper* y me pasó la rueda izquierda por la pierna. No oí *klaxon* de ninguna especie. Fué de pronto. En la izquierda de la calle. Cerca de la acera. Estuve cuarenta y dos días en el hospital. Me entablillaron la pierna y me pusieron unos sacos de arena porque tenía el hueso encaramado para que fuera estirando. Sufrió mucho. Le hacían falta sus padres. No volvió a la escuela ni pasó de grado.'' La bicicleta no era suya. Se la prestó un mu-

chacho que no sabe dónde vive y cuyo nombre no conoce. Había montado en bicicleta otras veces. Iba mirando "para alante." El *truck* le dió con el guardalodo izquierdo.

Claudina Aquerón profesora del niño dijo que éste hubiera pasado del segundo grado que estudiaba, que era de condición normal. Con su récord escolar a la vista declaró que tenía diez y nueve "F" que indican fracaso. Insistió en que era normal.

Juan Feliciano, socio gestor de la demandada, declaró sobre el seguro con la otra demandada. Se introdujo en evidencia la póliza.

Por último el Doctor Arsenio Comas, médico que asistió al lesionado dijo que éste "presentaba una fractura del tercio medio del fémur izquierdo, fractura simple." Examina una placa tomada al mes de estar en el hospital que revela una unión pero también que el hueso no está derecho. La pierna quedó tres cuartos de pulgada menos que la otra. Con el tiempo podrá andar sin muletas. La fractura pudo producirse al pasarle la rueda del *truck* por encima de la pierna. También por la bicicleta presionada por el *truck*.

La prueba de la demandada comenzó con la declaración del abogado notario Juan José Fuertes que autorizó los *affidavits* de Ana Guzmán y Tomás Cristiano en la investigación preliminar del suceso practicada por la compañía aseguradora demandada y explicó la forma en que fueron preparados, tomándose los testimonios taquigráficamente, transcribiéndose en maquinilla, dándoselos a leer o leyéndoselos a los testigos y firmando éstos entonces ante él.

Cuando los testigos Guzmán y Cristiano declararon en el juicio presentados por el demandante, la parte demandada les mostró los *affidavits* a fin de que los leyeran y explicaran ciertas contradicciones que advertían entre ellos y sus actuales testimonios. La Guzmán dijo que ella firmó sin que le dieran a leer el documento y que lo cierto era lo que declaraba en el juicio y más o menos expresó lo mismo Cristiano.

Con esos antecedentes la demandada dijo: "Presento

como evidencia para impugnar la declaración de los testigos Ana Guzmán y Tomás Cristiano, sola y exclusivamente, estos *affidavits*." Se opuso el demandante y la corte admitió en evidencia los *affidavits* "al solo fin indicado."

Se llamó a declarar al *chauffeur* Rafael Santiago Cosme. Dijo que "venía con una guagua de detalle de hielo de retirada al garage de la calle de Ernesto Cerra con dirección a Talleres, y se presentó un niño a cruzar por delante saliendo por Lucchetti como para Cerra." Conducía la guagua ni muy ligero ni muy despacio porque había muchos hoyos. Redujo al llegar a la bocacalle y antes de llegar tocó *klaxon*." En la calle "caben dos automóviles un poco apurados. La calle de más tráfico es la de Ernesto Cerra. Por la de Lucchetti hay muy poco tráfico. Yo iba que la rueda izquierda me quedaba al centro de la calle. Sucedió que cuando llegué a la esquina venía un niño corriendo una bicicleta y cuando ví el celaje traté de parar y pude parar pero siempre cogí la bicicleta y entonces quedó la bicicleta la rueda de atrás pillada con la rueda de la guagua, pero no cogió al niño debajo. Debajo de la bicicleta estaba el niño. Levantaron un poco la bicicleta y lo sacaron. La bicicleta quedó pillada conforme estaba."

Evaristo Velázquez dijo: "Estábamos hablando cuando venía un muchachito en una bicicleta . . . no alcanzaba muy fácilmente los pedales y venía dando culebreos . . . sentimos un *klaxon* y al sentir ese *klaxon* miramos cuando la guagua salió y ahí lo cogió con la rueda delantera y la rueda trasera de la bicicleta y nosotros corrimos y tenía el muchacho una pierna rota." La guagua "paró repentinamente . . . en el mismo centro de la calle . . . iba despacio . . . la calle de Ernesto Cerra es la de más tráfico . . . el *truck* no le pasó por la pierna al niño."

Juan Hernández manifestó: "Yo estaba mirando para el templo protestante que queda al frente cuando sentí el *klaxon*, hice así y la ví, la guagua entonces venía a pasar por la calle Lucchetti . . . y venía el niño . . . cuando el *chauffeur* siguió

que iba como dos metros después de la esquina venía el muchachito culebreando con una bicicleta y se le metió debajo y la rueda de la bicicleta quedó pillada y el niño pillado con la bicicleta. . . . La guagua venía al paso de un hombre a pie con su rueda izquierda al centro de la carretera.''

Basilio Rodríguez manifestó: ''Venía una bicicleta de allá, venía como dando *zigzags* y mientras él venía llegando a la esquina sentimos el *klaxon* y en el momento se enfrentaron y hubo un choque entre ellos y vimos al muchacho tirado debajo de la bicicleta y corrimos para allá. La guagua estaba parada casi al centro de la calle por su derecha . . . venía despacio, hay muchos hoyos. No había atravesado mucho. Fué al romper la calle.''

Por último declaró el Doctor W. F. Lippitt, médico cirujano con cuarenta y nueve años de práctica. Examinó el niño poco antes del juicio. También la placa a que se refirió el Dr. Comas. En su opinión el niño no debió comenzar a andar tan pronto como lo hizo. Eso no obstante el hueso está bien unido. No cree posible que el *truck* pasara por encima de la pierna sin haber dado lugar a fracturas múltiples del hueso. Pudo ocasionarse la fractura al caer pillado por la bicicleta presionada ésta por el *truck*.

Llamado en *rebuttal* el Dr. Comas dijo que dió de alta al niño por considerarlo curado. No sabe lo que hizo después que salió del hospital.

Siendo ésa la evidencia presentada por ambas partes, no es posible sostener que fuera apreciada con manifiesto error por la corte sentenciadora a los efectos de dictar la sentencia que dictó declarando la demanda sin lugar. No nos detendremos a considerar las manifestaciones que hiciera en su relación del caso y opinión. Pueden alguna o algunas de esas manifestaciones estar equivocadas, sin que por ello proceda la revocación de la sentencia. Lo que importa principalmente es la conclusión final reveladora del juicio definitivo de la corte.

█ Tampoco erró la corte sentenciadora al admitir los

dos *affidavits* de que se ha hecho mérito a los solos efectos de impugnar las declaraciones de los dos testigos del demandante de que se trata.

El artículo 159 de la Ley de Evidencia, leyes de 1905, pág. 157, dice:

"También podrá tacharse a un testigo mediante evidencia de que hizo, en otras épocas, manifestaciones incompatibles con su actual declaración; pero antes de poder hacer esto, habrá que referirle las manifestaciones, con las circunstancias de fechas, lugares y personas que se hallaban presentes; se le preguntará si hizo esas manifestaciones, y de haberlas hecho, se le permitirá que las explique. Si las manifestaciones se hicieron por escrito, deberán enseñarse al testigo antes de podérsele interrogar acerca de ellas."

Y aquí como hemos visto los requisitos exigidos por la ley se cumplieron. Véase el caso de *Vélez* v. *Iturregui,* 44 D.P.R. 487, 490.

*Debe declararse no haber lugar al recurso y confirmarse la sentencia recurrida.*

El Juez Asociado Señor Travieso no intervino.