Rosa Esther Santiago, menor de edad, representada por su madre natural con patria potestad, Juana Santiago, demandante y apelada, *v.* Esveraldo Martínez Rodríguez, demandado y apelante.

Núm. 10476.—*Sometido:* Diciembre 3, 1951.   *Resuelto:* Diciembre 26, 1951.

*E. Martínez Avilés, Isaías M. Crespo* y *Armindo A. Cadilla,* abogados del apelante; *Nicolás Torres Marrero,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Basada en haber disfrutado de la posesión continua del estado de hija natural del demandado Esveraldo Martínez Rodríguez, Rosa Esther Santiago, menor de edad, representada por su madre natural con patria potestad, dedujo contra aquél demanda de filiación. Negados los hechos esenciales en ella alegados y visto el caso en sus méritos, el Tribunal de Distrito de Puerto Rico, Sección de Bayamón, dictó "Relación de Hechos, Opinión y Sentencia" declarando con lugar la demanda, con costas y $300 para honorarios de abogado.

En ella el tribunal inferior hizo constar lo siguiente:

"Si analizamos la prueba aducida en este caso que ahora resolvemos, necesariamente tenemos que llegar a la conclusión de que la posesión continua del estado de hija natural de la menor está justificada por los actos de su padre y de su familia. Del conjunto de la prueba, llega la corte a la conclusión de que esta niña es el resultado de las relaciones sexuales habidas entre Juana Santiago y Esveraldo Martínez Rodríguez; que al tiempo de la concepción y nacimiento de la niña, tanto el padre como la madre eran solteros y sin impedimento alguno para contraer matrimonio entre sí; que esta niña ha gozado de lo que llama el artículo 125 del Código Civil 'de la posesión del estado de hija natural justificada por los actos del padre y de su familia'. No debe ser para el padre desdoro que la madre haya sido la sirvienta de su casa. Eso no lo pensó él cuando la gozaba en su virginidad. Otros que fueron grandes en el mundo tuvieron una cuna más humilde que Rosa Esther, quien es por cierto,

el vivo retrato de su padre. La estoy mirando en estos momentos y he mirado bien las características de las facciones del padre, y esa niña es el retrato de su padre. Esto no es una prueba que determina la paternidad, pero es un indicio de prueba, tal como lo ha dicho nuestra Corte Suprema. La corte ha dado entero crédito a las declaraciones de la parte demandante, declara con lugar la demanda y declara hija natural reconocida de Esveraldo Martínez Rodríguez a la menor Rosa Esther Santiago con todos los derechos que la ley le asigna. Se ordena al Registrador Demográfico del pueblo de Vega Baja, sitio donde naciera esta niña el día 11 de marzo de 1939, que proceda a hacer constar que dicha niña es hija natural reconocida de Esveraldo Martínez Rodríguez. Se condena al demandado, por ser contumaz, no solamente al pago de las costas, sino también a pagar $300 para los honorarios del abogado de la demandante. ..."

■■ En apelación sostiene en primer lugar el demandado que dicho tribunal erró al no dar cumplimiento a la Regla 52(a)([1]), por no formular separadamente ni en forma alguna sus conclusiones de hechos y de derecho. El fin primordial de esa regla, que ha de ser cumplida estrictamente por los juzgadores, no es otro que poner a esta corte en condiciones de poder determinar si las conclusiones de hechos y de derecho a que llegó el tribunal sentenciador estuvieron justificadas o no. *Santana* v. *García*, 71 D.P.R. 142; *Varela* v. *Fuentes*, 70 D.P.R. 879. Empero, si bien en este caso no se cumplió estrictamente con lo preceptuado en ella, sin embargo, ha habido cumplimiento sustancial de la misma y siendo ello así es preferible no devolver el caso al tribunal sentenciador con el propósito de que éste haga tales conclusiones. *Cáceres* v. *García*, 71 D.P.R. 406, 408. El primer error señalado no ha sido, por tanto, cometido.

■ Tampoco lo fué el segundo. El dictar sentencia en corte abierta no constituye error, especialmente en casos como

---

([1]) La Regla 52(a) de las de Enjuiciamiento Civil, en lo aquí pertinente, provee:

"...En todos los casos la corte expondrá los hechos que estime probados y separadamente consignará sus conclusiones de derecho y ordenará que se anote la sentencia correspondiente; ..."

el presente en que el juez que dictó la sentencia fué el mismo que presidió la vista, oyó declarar a los testigos y vió sus gestos y ademanes. Siendo claros, a su juicio, los hechos envueltos y el derecho aplicable a los mismos, era sin duda innecesario esperar a hacer un estudio ulterior del caso para luego dictar la sentencia procedente. Véase *Santiago* v. *González*, 71 D.P.R. 942.

Durante el curso del juicio la madre de la menor demandante declaró que mientras el demandado estudiaba en Louisiana ella recibió varias cartas de él, que las tenía guardadas en una maleta y las dejó en la casa de ella con otros papeles cuando se fué a trabajar a otra casa, y que en su casa se extraviaron. El demandado se opuso a que ella declarara en relación con el contenido de las mismas, alegando que la mejor evidencia eran las propias cartas. El tribunal inferior declaró sin lugar la objeción y permitió la declaración. No creemos que se cometiera error al actuarse en esa forma. De acuerdo con el artículo 24 de la Ley de Evidencia —artículo 386 del Código de Enjuiciamiento Civil, ed. 1933— puede haber evidencia del contenido de un escrito cuando el original se hubiere extraviado o destruído. Si conforme declaró la madre de la menor esas cartas se extraviaron, explicando las causas del extravío, el contenido de ellas era claramente admisible en evidencia.

En los errores finales señalados se insiste por el apelante en que el tribunal inferior cometió manifiesto error en la apreciación de la prueba y al dictar sentencia declarando con lugar la demanda. A los fines de determinar si los mismos fueron cometidos o no, se hace necesario reseñar, siquiera a grandes rasgos, la prueba que el tribunal inferior tuvo ante su consideración. Ésta fué la siguiente:

*Juana Santiago*, madre de la menor demandante, declaró que allá para los años 1935 a 1938 ella vivió en la casa del demandado Esveraldo Martínez Rodríguez, debido a que la madre de éste, Rosa Rodríguez, fué a la casa de ella a solicitar de su mamá "que le alquilaran a una de nosotras" y al

contestarle que ellas no se alquilaban, la declarante fué a vivir a la casa de él "como una hija de la casa;" que para el año 1937 él la enamoró y ella le correspondió, teniendo actos carnales como resultado de los cuales quedó encinta; que ella era una niña, soltera y señorita, y soltero él también y estudiante de las escuelas de Vega Baja y más tarde de un colegio en Río Piedras; que sus relaciones con Esveraldo comenzaron en Vega Baja y que al quedar encinta ella se lo dijo a éste y Esveraldo le informó que no se lo revelara a los padres de él porque eso podía traerle malas consecuencias, "y me dijo que él estaba dispuesto a casarse conmigo;" que después ella se fué para la casa de sus padres y allí dió a luz a Rosa Esther; que después de eso ella y el demandado se veían a menudo, como dos o tres veces por semana; que Esveraldo iba a verlas a ella y a su hija y les daba pequeñas cantidades de dinero, porque él era un estudiante; que Rosa Esther nació el 11 de marzo de 1939 y para aquel entonces él estudiaba en Puerto Rico; que después de nacida la niña la tuvieron en su casa los padres de él como diez meses, con el propósito de cuidarla y ayudarla y que la declarante consintió porque sabía que ellos podían tenerla mejor, por ser ella muy pobre; que la madre del demandado fué a la casa de ella a pedirle que le entregara la niña, diciéndole que Esveraldo quería que la tuviera para reconocerla; que la testigo accedió y que mientras la menor vivió con los padres del demandado el tiempo indicado, éste vivía en la misma casa de sus padres; que la niña dejó de residir en el hogar del demandado porque pasaron muchos meses y ella vió que el demandado no se casaba con ella ni le reconocía a su hija; que en presencia de Esveraldo la madre de éste le decía que le dejara la niña para educarla y reconocerla y que cuando ella exigió que le reconocieran la niña no querían entregársela, y ella insistió y al decidir traérsela la madre de Esveraldo le dijo: "¡Cómo te voy a tolerar que te lleves a esa nieta mía!" que después el demandado se fué para Louisiana donde estudiaba y desde allá le escribió 3 ó 4 cartas; que entonces ella vivía en su

casa y al irse para Morovis a trabajar para una casa esas cartas se le extraviaron; que en ellas él le decía que cuidara la niña "como hija que era de él; que tan pronto él viniera él iba a donde mí... · Y él me pedía también que la tuviera su familia en su casa, que dejara la niña a su mamá, a doña Rosa Rodríguez... Como él se había embarcado, él me mandaba a decir que se la dejara con la mamá, que él me la reconocería;" que ella escribió al demandado insistiendo en que le reconociera la niña; que cuando éste regresó de los Estados Unidos ya la niña vivía con ella en su casa; y que tanto el demandado como la madre de éste le daban dinero para la niña.

*María Sánchez* es madre de crianza de Juana Santiago y conoce a las partes en el litigio, al igual que a Rosa Rodríguez. Recuerda cuando Juana, quien era una muchacha de 13 años, se fué para la casa de la madre de Esveraldo. Juana regresó a su hogar en el año 1938; llegó con mareos y con vómitos; estaba encinta. Esveraldo iba a verla a la casa de ellos, tanto cuando Juana estaba encinta como después de haber dado a luz. Él veía a Juana y a la niña; cogía a ésta en los brazos, la acariciaba y la besaba y le decía a Juana que no se apurara. Después que Juana dió a luz Esveraldo estuvo yendo a casa de ellos como cuatro meses y luego se embarcó. Después que Juana dió a luz, la madre de Esveraldo fué a la casa de ellos como 10 ó 12 veces, semanalmente. Esveraldo siempre le llevaba $2 ó $3 a la niña y le compraba leche.

*Lydia Sierra* conoce a Juana Santiago, al demandado y a la madre de éste. Acompañó a Juana con la niña un día que visitaron la casa de Esveraldo; fueron para las navidades de 1948 porque el Lic. Martínez, hermano de Esveraldo, les dijo que éste estaría en su casa ese día. Doña Rosa las recibió y estuvieron en casa de ella desde la una hasta las seis de la tarde; Doña Rosa le pidió a Juana que no llevara a su hijo a la corte, le preguntó si pensaba poner la niña en la escuela y fué muy cariñosa con la menor.

*Aquino Ayala* hace 15 ó 16 años que conoce a Juana Santiago. A Rosa Rodríguez la conoce de vista, porque una vez ella estuvo en casa de él, allá para el año 1941 ó 1942. Doña Rosa fué allá para entregarle a Rosa Esther. Doña Rosa "no quería alejarse de la niña porque ya estaban en trámites de hablar con su hijo para que la reconociera." Eso se lo dijo a Juana en presencia de él. Cuando doña Rosa le entregó la niña también le dió un dinero a Juana y le dijo "cuídame bien a mi niña".

*Angel Luis Cortés* fué empleado por Juana Santiago para que fuera a la casa de la Sra. Martínez a buscarle una cuna. Ésta le entregó la cuna, un paquete de ropa y cierta cantidad de dinero, el cual él entregó a Juana.

Al finalizar la prueba de la demandante el letrado de ésta se expresó así: "Señor Juez, vamos a ofrecer en evidencia, para cerrar nuestro caso, el parecido que existe entre la niña y el demandado." Y el Juez manifestó: "Ya yo los ví a los dos."

La del demandado consistió en las declaraciones de *Rosa Rodríguez*, madre de Esveraldo, de *Luz María Martínez* y del propio demandado. Ella tendió a demostrar que es cierto que que Juana Santiago trabajó en su casa y que la tenían no como hija de la casa sino como empleada; que es cierto que la menor Rosa Esther vivió en casa de la familia Martínez, mas ello se debió a que Juana Santiago les dijo que tenía que operarse y se compadecieron de la niña; pero que le dijeron a Juana que no podían tenerla por mucho tiempo porque la niña andaba mucho, la casa era alta y se podía caer; y que al igual que a Rosa Esther ellos tuvieron en su casa otras niñas, a quienes trataban como hijas, lo mismo que hicieron con Rosa Esther. El propio *Esveraldo Martínez* declaró que es ingeniero agrónomo y soltero; que conoce a Juana Santiago, pero nunca ha tenido relaciones amorosas con ésta, que en ningún momento ha conocido a Rosa Esther y que tampoco es cierto que él le escribiera cartas a Juana Santiago desde Estados Unidos.

La prueba de la posesión de estado de hija natural del demandado ha de ser robusta y convincente. *Vargas* v. *Jusino*, 71 D.P.R. 389, 394. En este caso lo fué. La creída por el tribunal inferior, como hemos visto, fué en síntesis al efecto de que mientras la madre de la menor vivió en la casa del demandado éste y ella sostuvieron relaciones íntimas, como resultado de las cuales ella salió encinta; que después de nacida la menor el demandado la visitaba frecuentemente y trataba a ésta con cariño, la acariciaba y la besaba, y cuando se ausentó de Puerto Rico le escribía a la madre de la niña diciéndole que reconocería a ésta. Tendió a probar, además, que la madre del demandado visitaba a la menor, la trataba con afecto y se llevó a ésta para su casa por espacio de 8 ó 10 meses y la cuidaba cual si fuera una nieta. La posesión continua del estado de hija natural del padre demandado, justificada por actos de éste y de su familia ha quedado claramente demostrada. Estuvo justificado el tribunal inferior al así resolverlo.

*Debe confirmarse la sentencia apelada.*