ISABEL BLANES MANGUAL, demandante y recurrente *v.* RICARDO MESTRE ET AL., demandados y recurridos.

Número: 11781. Resuelto: 6 de septiembre de 1961.

---

*Heriberto Torres Solá,* abogado de la demandante-recurrente; *Miguel Marcos Contreras* y *Miguel Marcos Morales,* abogados de los demandados-recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel, como Presidente de Sala y los Jueces Asociados Señores Serrano Geyls y Rigau.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Se trata de una acción sobre sentencia declaratoria iniciada con el propósito de que el tribunal decrete que las tres

propiedades inmuebles que se describen en la demanda son bienes privativos de la demandante doña Isabel Blanes Mangual.

La demandante estuvo casada en únicas nupcias con don Salvador Mestre Caparrós, quien falleció bajo testamento abierto, el día 13 de junio de 1951. El testador no dejó herederos forzosos y nombró como sus únicos y universales herederos voluntarios a su esposa doña Isabel Blanes en concepto de usufructuaria de por vida de todos sus bienes y además a don Enrique y don Ricardo Mestre Caparrós y doña Eladia San Millán Caparrós en la nuda propiedad de dichos bienes, por partes iguales entre sí. Don Enrique Mestre Caparrós falleció en Aguadilla antes que el testador.

La viuda y los otros dos herederos no pudieron ponerse de acuerdo en cuanto a un proyecto de división de los bienes dejados por Mestre debido a haber surgido disputa entre ellos principalmente sobre el carácter privativo o ganancial de las tres fincas descritas en la demanda. Fue ello lo que dio origen a este pleito.

En su primera causa de acción la demandante alega que al fallecimiento de su esposo y desde el día 14 de noviembre de 1940 ella era dueña en pleno dominio por título privativo inscrito en el Registro de la Propiedad de un solar compuesto de 690 metros cuadrados ubicado en la Avenida Magdalena de Santurce y colindante en parte por el Este con la calle Villamil; que en diciembre de 1940 a marzo de 1941, la demandante hizo edificar sobre el mencionado solar, con dinero privativo suyo, dos casas de concreto a un costo de $5,000 cada una; que dichos $10,000 los pagó con parte del efectivo que recibió en 1937 de la venta de tres condominios en tres fincas rústicas por la suma de $50,000, los cuales había adquirido en 1926 por herencia de sus padres don Rafael Blanes Mestre y doña Georgina Mangual Delgado; que dichas edificaciones no han sido inscritas en el Registro de la Propiedad, ni se le han hecho adiciones o mejoras de ninguna naturaleza.

En la segunda causa de acción alega que desde 1940 viene siendo dueña en pleno dominio por título privativo inscrito en el Registro de la Propiedad de otro solar, compuesto de 278.1375 metros cuadrados ubicado en la Avenida Caribe, sector del Condado, Santurce, Puerto Rico; que de marzo a junio de 1940 hizo edificar sobre el referido solar, con dinero privativo suyo, una casa de concreto a un costo de $5,000 a la cual no se le ha hecho adición o mejora alguna ni se ha inscrito en el Registro de la Propiedad; que dichos $5,000 provenían de las siguientes fuentes: $4,600 de la herencia de sus padres (venta de tres condominios por $50,000) y $360 de un legado de $500 que le hiciera su tía carnal doña Carmen Mangual Delgado.

En la tercera causa de acción alega que por escritura pública otorgada en el año 1927, don Hermógenes P. Vargas y su esposa doña Rita Nival constituyeron hipoteca voluntaria a favor de don Salvador Mestre, para responder de un préstamo de $5,500, sobre un casa y solar ubicados en la calle Parque de Santurce; que habiendo fallecido don Hermógenes Vargas y habiéndose incumplido las condiciones del contrato, se inició por don Salvador Mestre representado por el abogado Francisco Soto Gras, procedimiento ordinario en ejecución de la hipoteca que culminó en el año 1929 en la venta en pública subasta y adjudicación a dicho Salvador Mestre de la finca hipotecada; que los $5,500 prestados a don Hermógenes P. Vargas pertenecían en el acto de dicho préstamo a la demandante como propiedad privativa suya; que de esos $5,500, la suma de $5,000 procedía del producto de la venta de un condominio a Emeterio Ramírez Martí, diez y nueve días antes del préstamo, en una finca situada en el barrio Guanajibo de Mayagüez y cuyo condominio había adquirido por herencia de sus padres, y los otros $500 provenían de una donación gratuita que por $2,000 habíale hecho en vida su padre Rafael Blanes; que aunque la escritura de préstamo e hipoteca se hizo a nombre de Mestre, como

si se tratara de bienes gananciales, la demandante por razones de confianza y delicadeza no creyó necesario corregir entonces el error; que con posterioridad a la adjudicación a Mestre de dicha propiedad, la demandante la mejoró, levantando sobre lo edificado dos plantas más de concreto, y al fondo del solar hizo construir tres garajes y tres cuartos para el servicio doméstico con servicio sanitario, eliminando el mirador y la marquesina que originalmente formaban parte de la finca; que estas obras las hizo a un costo de $8,422.15 con dinero exclusivo suyo, a saber: $1,500 de un donativo de $2,000 que le hizo en vida su padre Rafael Blanes Mestre; $4,000 que le correspondían como herencia en el efectivo metálico por sus dichos padres en Puerto Rico; $1,000 de un legado que le dejó su madrina de bautismo, Isabel Delgado, y $1,900.15 que le correspondieron por herencia en el efectivo dejado en España a su fallecimiento por su señor padre.

La contestación de los demandados niega los hechos esenciales de la demanda en sus tres causas de acción, especialmente los alegados al efecto de que durante su matrimonio con don Salvador Mestre Caparrós, la demandante, con dinero privativo suyo y con el concepto de privativo adquiriera las casas y solares que se describen en dicha demanda. Aceptaron que durante su matrimonio con Mestre la demandante había recibido los $50,000 procedentes de la venta a la Sucesión de Mateo Fajardo de bienes heredados por la demandante de sus padres y que además recibió los $5,000 procedentes de la venta de su condominio privativo en la finca situada en el barrio Guanajibo de Mayagüez. Alegaron además, en lo aquí pertinente, que no han firmado el proyecto de escritura de partición de los bienes de Mestre preparado por el notario de la demandante, porque ésta no ha justificado con prueba fehaciente, la procedencia de la diferencia en dinero entre $55,000 que ellos admiten recibió como privativos durante el matrimonio, y $70,000 que ella alega

recibió como bienes privativos; que además la demandante no ha justificado con prueba que las edificaciones mencionadas en la demanda se hicieron con dinero privativo suyo. Contiene la contestación una llamada Materia Nueva que gira en torno a las actuaciones de las partes relacionadas con el proyecto de escritura de partición de herencia preparado por el abogado de la demandante y como ya hemos indicado antes, no llegó a firmarse.

Después de celebrarse una conferencia con antelación al juicio ante un juez y un juicio en los méritos ante otro magistrado, el tribunal a quo dictó sentencia declarando que las tres propiedades urbanas descritas en la demanda, han de tener y tienen el carácter de bienes gnanciales de la sociedad conyugal entre el Lcdo. Salvador Mestre Caparrós y doña Isabel Blanes Mangual, pero debiendo pagarse a la demandante del metálico existente en la herencia del señor Mestre Caparrós a su viuda doña Isabel Blanes Mangual, las cantidades de $3,900 y $1,460.22 invertidas en la adquisición de los solares descritos en la primera y segunda causas de acción, debiendo inscribirse estas tres propiedades en el Registro de la Propiedad como gananciales del matrimonio.

El alegato de la demandante recurrente contiene un señalamiento de siete errores. En el primero se imputa error al tribunal sentenciador al no admitir en evidencia y dejar de considerarlos, los exhibits marcados 1, 2, 3 y 4 como evidencia ofrecida y no admitida de la demandante. En el segundo se señala como error el dejar de aplicar a este caso la doctrina jurisprudencial al efecto de que en litigios sobre determinación de bienes privativos entre marido y mujer en que no están envueltos derechos o intereses de terceros, "los tribunales no deben ser tan exigentes en cuanto a la suficiencia de la prueba"; y que "la prueba del dominio privativo razonablemente cierta, en vista de las circunstancias, es todo lo que la ley exige". Los demás errores señalados,

en términos generales, atacan las conclusiones de hecho a que llegó el juez sentenciador al resolver que los bienes en litigio eran gananciales.

A los fines de la discusión del primer error es necesario resumir la teoría de la demandante. Ella trató de probar que además de los $55,000, producto de las ventas de bienes que recibió durante su matrimonio con Mestre como herencia de sus padres, según constaba en la escritura particional de los bienes dejados por éstos, recibió otras sumas adicionales a título lucrativo que invirtió también en la adquisición de las propiedades descritas en la demanda y que parte de esas sumas adicionales provenían de la herencia de su padre que no figuraban en la escritura particional por haber aparecido con posterioridad a su otorgamiento y cuyos dineros le fueron entregados de conformidad con lo convenido en la partición y división de herencia, al efecto de que si aparecieren otros bienes o derechos pertenecientes a la herencia serían distribuidos entre los interesados en ella.

El exhibit 1, no admitido, es el original de una carta fechada en 9 de enero de 1926(¹) en Mayagüez, Puerto Rico, escrita por el Dr. Antonio Blanes, hermano de la demandante y dirigida a sus hermanas María Luisa e Isabel. El primer párrafo de esta carta dice así:

"De acuerdo con nuestra conversación, tengo a bien de acompañarles los giros o cheques, cada uno por valor de $3,922.15 importe de la parte que les corresponde a cada una de ustedes del efectivo y legado de acuerdo con las notas que le acompaño.

(¹) Esta carta debió haberse escrito en enero 9 del año 1927 y no en el año 1926 como se consignó en ella por error ya que don Antonio Blanes Mangual falleció en 13 de septiembre de 1926 y la escritura de partición de sus bienes se había otorgado en noviembre 10 del mismo año 1926. Se advierte además el error porque la carta necesariamente debió escribirse después de la muerte del señor Blanes Mangual ya que (1) en ella se remesa a la demandante y a su hermana cierta cantidad de dinero de un legado y en el estado de cuenta que se acompañó a la misma se hace referencia a la suma pagada en concepto de contribución de herencia. Por otro lado, no es de extrañarse que se haya incurrido en tal error si se considera que la carta fue escrita al comienzo de un nuevo año, o sea, en los primeros días del mes de enero de 1927.

"A María Luisa
     "Legado ...................... 2, 000
     "Efvo. sobrante ............... 1, 922. 15
                                     "3, 922. 15

"Isabel
     "Legado ...................... 2, 000
     "Efvo. sobrado................. 1, 922. 15
                                     "3, 922. 15"

La carta quedó debidamente identificada tanto por el testimonio de la demandante como por el testimonio de doña María Cabrera viuda de Blanes. Esta testigo identificó la firma de la carta como la de su esposo, el Dr. Antonio Blanes Mangual, quien para la fecha del juicio, hacía quince años que había fallecido.

La demandante declaró que junto con esa carta recibió la remesa de $3,922.15 que le hiciera su hermano el Dr. Blanes en un cheque que ella cobró. Ofrecido el documento en evidencia, el tribunal se negó a admitirlo por el fundamento de que era prueba secundaria y que la mejor evidencia eran los cheques. La demandante sentó a declarar a Juan de Dios Rivera, encargado del departamento de cuentas corrientes del Royal Bank of Canada. Este testigo identificó una certificación oficial tomada de los récords de dicho banco. Era una hoja encabezada "Enero veinticinco de mil novecientos veintisiete." En dicha hoja aparecían dos extracciones de la cuenta del Dr. Blanes, hechas en enero 11 de 1927 por la suma de $3,922.15 cada una. El testigo declaró que dichas extracciones indican que los cheques fueron pagados por el banco. Ofrecida dicha certificación, el tribunal la rechazó y la marcó exhibit 3 de la demandante como prueba ofrecida y no admitida. Al ofrecerse en evidencia dicha certificación, los demandados se allanaron a su admisión pero entonces el juez sentenciador les preguntó que si no la objetaban a pesar de tratarse de una persona distinta.

Fue entonces que el abogado de los demandados objetó la admisión de dicha prueba por ser inmaterial e impertinente. Como consecuencia de esta objeción, recayó la resolución denegando la admisión del documento.(²)

La imposibilidad de presentar el cheque o los cheques en evidencia quedó completamente establecida.

La demandante declaró que ella no tenía el cheque en su poder porque al cobrarlo lo devolvió el banco girado. El encargado del Departamento de Cuentas Corrientes del Royal Bank of Canada declaró que el Banco, debido al tiempo transcurrido, no conservaba copia fotostática de esos cheques y que además los cheques se enviaban al cliente al final de cada mes. Doña María Cabrera, viuda del Dr. Blanes, girador de los cheques, declaró que al morir su esposo, todos los documentos de éste, tales como libros, correspondencia, cheques, etc., quedaron en su poder; que destruyó los documentos viejos y que por esa razón no tenía en su poder los dos cheques en discusión.

---

(²) Este incidente aparece del récord así:

"Lcdo. Marcos Morales:

"P. Vamos a eso. ¿Dónde están los pagos esos?

"R. Aquí están.

"P. ¿Entonces en enero once de mil novecientos veintisiete, que es esta cantidad en esta fecha, aparecen dos extracciones que hizo el doctor A. Blanes de su cuenta?

"R. Sí, señor.

"P. Eso es todo.

"Hon. Juez:

"¿Y a eso equivale esta certificación?

"R. Sí, señor.

"Lcdo. Marcos Morales:

"No hay inconveniente, admitido.

"Hon. Juez:

¿"Entonces se admite, no hay objeción? ¿Aunque es una persona distinta lo admite?

"Lcdo. Marcos Morales:

"Yo me opongo porque no tiene relación alguna con el caso, porque es inmaterial e impertinente. Me opongo por eso.

"Hon. Juez:

"Yo creo que lo que procede es admitirlo como documento no admitido".

En el supuesto pues, de que los cheques fueran la mejor evidencia de que los mismos habían sido librados y cobrados por la demandante y su hermana, no era inadmisible prueba secundaria de ese hecho en vista de la imposibilidad de producir la mejor prueba. *Santiago* v. *Martínez*, 72 D.P.R. 934, 937; *Burgos* v. *Báez*, 17 D.P.R. 631, 633. Cf. *Pueblo* v. *Gelpí*, 32 D.P.R. 137, 141.

La demandante trató de introducir esos dos documentos (exhibits 1 y 3) con el propósito de corroborar su testimonio al efecto de que ella había recibido y cobrado el cheque por $3,922.15 y que había invertido dicha cantidad en la adquisición de los bienes en disputa. La decisión del caso dependía en gran parte del crédito que se le diera al testimonio de la demandante y todo indica que para el juez sentenciador, fue una cuestión decisiva la prueba sobre las cantidades adicionales a los $55,000 que la demandante alegaba había aportado al matrimonio, como bienes privativos suyos. No se le dio crédito a la demandante. Así lo indica la siguiente conclusión del tribunal a quo:

"(3) Que no se ha probado que la demandante, Isabel Blanes Mangual, aportara a su matrimonio con Salvador Mestre Caparrós, otras cantidades en dinero o en bienes que los $55,000 admitidos por la parte demandada, y procedentes estos cincuenta y cinco mil dólares de la venta de bienes inmuebles de la herencia de los padres de la demandante."

No nos parece de peso el argumento de los recurridos al efecto de que el error, de haberse cometido, no fue perjudicial a la recurrente porque el tribunal a quo tuvo ante sí prueba independiente del hecho que pretendía establecer. Sin embargo, como la otra prueba era testifical no sería fácil determinar si la negativa del tribunal a darle crédito a esa prueba se debió a la ausencia de aquella prueba documental, cuya admisión denegó.

La demandante declaró que en el año 1927 recibió en giro la suma de $2,391.05 como participación en los bienes dejados

por su padre en Palma de Mallorca, Islas Baleares. Identificó una carta manuscrita de 25 de febrero de 1927, escrita en Palma, dirigida a su hermana María Luisa por el doctor Rafael Blanes con la que le enviaba dos giros por $4,400.16 y $188.98 respectivamente, la mitad para ella y la otra mitad para Isabel. El tribunal denegó la admisión de este documento por el fundamento de que la mejor prueba era el giro o una constancia del banco que hizo la remesa. El documento fue marcado exhibit 2 de la demandante, ofrecido y no admitido.

En una vista posterior testificó el remitente de la carta, Dr. Rafael Blanes. Identificó el documento como escrito y remitido por él junto con dos giros del Banco de Palma de Mallorca. También depuso sobre las gestiones infructuosas que realizó para conseguir del mencionado banco que le certificara todos los extremos necesarios para ofrecer como mejor evidencia los dos giros que se mencionan en el Exhibit 2 o cuaquier otra prueba del banco que se relacionara con la remesa que hizo desde Palma de Mallorca el propio Dr. Antonio Blanes a su hermana doña María Luisa Blanes de dos cantidades de $4,400.16 y $188.90 en el mes de febrero de 1927. A este efecto la demandante presentó, y fue admitida en evidencia sin objeción, una certificación del referido banco acreditando que no tenía ni podía suministrar dicha prueba porque "de conformidad con la Ley de treinta de mayo de 1941 por la que se sustituyó el artículo 49 del Código de Comercio, fueron por este Banco inutilizados y destruidos los libros principales y auxiliares de asuntos relativos a las indicadas y otras clases de operaciones realizadas con anterioridad al 31 de diciembre de mil novecientos treinta y dos". Una vez establecidos estos hechos, la demandante volvió a ofrecer en evidencia la mencionada carta, pero el tribunal, sin que mediara oposición de la parte contraria y anticipándose a lo que pudieran oponer, se expresó así: "La obje-

ción de la otra parte no es esa, dice él que la mejor prueba es si constaba del banco la remesa. El tribunal sostiene su negativa a admitirla y la deja como evidencia no admitida".

Por las razones que expusimos al discutir anteriormente los exhibits 1 y 3 el tribunal a quo cometió error perjudicial a la demandante al negarse a admitir el exhibit 2 y al dejar de considerarlo junto con la demás prueba al resolver el litigio.

■ El tribunal de instancia cometió error también al denegar la admisión del exhibit 4 de la demandante que consiste de una certificación final, con una serie de certificaciones anexas del ingeniero Jorge Valdejulli, dirigidas a doña Isabel Blanes de Mestre, que cubre la construcción en el solar de la Calle Caribe mencionada en la segunda causa de acción.

La demandante había probado que adquirió el referido solar de la calle Caribe en 11 de marzo de 1940 con dinero privativo suyo, según lo admitió su esposo don Salvador Mestre en la escritura de compraventa. Había declarado además, que en 19 de marzo del mismo año, celebró un contrato con el ingeniero Valdejulli para la construcción de una casa sobre el referido solar a un costo de $5,000, habiéndose admitido en evidencia el referido contrato. Declaró además que su esposo no tuvo intervención alguna en el contrato ni en la construcción de esa casa. El indicado contrato fue marcado como Exhibit 6 de la demandante, se titula "Contrato de Construcción" y en él comparecen, como únicos contratantes doña Isabel Mestre, a quien se llama la "propietaria" y Jorge Valdejulli a quien se llama el "contratista". De acuerdo con este contrato la propietaria se obligaba a pagar al contratista los $5,000, precio de la obra, en la siguiente forma: $350 en el momento de firmarse el contrato para cubrir ciertos gastos preliminares y el resto por certificaciones semanales que se pagarían los viernes de cada semana, por el importe del trabajo realizado durante la semana y el material acopiado a la obra. Terminada la obra, el contra-

tista rindió a la demandante una "Certificación Final del Precio de Construcción de una casa de su Propiedad en la Calle Caribe de Santurce, Puerto Rico." Dicha certificación contenía una liquidación de las cantidades recibidas en pagos parciales y la suma adeudada por la propietaria al contratista. Dice así:

"Jorge Valdejulli
　　　Ingeniero Contratista
　　　Calle Arizmendi No. 4
　　　Río Piedras, P. R.
　　　Apartado 187
　　Sra. Isabel Blanes de Mestre
　　Santurce, P. R.
　　Certificación Final
　　del precio de construcción de una
casa de su propiedad en la calle
Caribe, de Santurce, P. R.:

Precio de construcción según contrato— $5,000.00
Cantidades recibidas:

| | | |
|---|---|---:|
| Marzo | 21, 1940 | 350.00 |
| " | 30, " | 1,500.00 |
| Abril | 5, " | 345.00 |
| " | 12, " | 425.00 |
| " | 12, " | 25.00 |
| " | 19, " | 305.00 |
| " | 26, " | 350.00 |
| Mayo | 3, " | 500.00 |
| " | 10, " | 250.00 |
| " | 10, " | 210.00 |
| " | 17, " | 340.00 |
| " | 24, ' ' | 300.00 |
| Derechos inspección luz | | 3.00 |
| Total recibido | | 4,903.30 |
| Total Adeudado | | 96.70 |

SEuo

(Fdo.) Jorge Valdejulli."

Esta prueba documental rechazada tendía a corroborar la declaración de la demandante sobre el hecho básico en

controversia y debió admitirse para darle el valor y peso que tuviera, por la misma razón que se admitió el plano de la obra, el contrato de construcción, y los recibos de contribución sobre la propiedad expedidos a nombre de dicha demandante.

■ Ya hemos rechazado la contención de los recurridos de que de haber incurrido en error el tribunal sentenciador al negarse a admitir la prueba documental a que nos hemos venido refiriendo, dicho error no fue perjudicial a la demandante. Igualmente rechazamos ahora su indicación de que no podemos revisar este error porque el abogado de la demandante no tomó excepción de las distintas resoluciones del tribunal. Desde que comenzaron a regir las Reglas de Enjuiciamiento Civil de 1943, las excepciones formales a las decisiones y órdenes del tribunal son innecesarias. Regla 46, hoy Regla 42 de Procedimiento Civil.

Es innecesario discutir ahora los demás errores señalados por la recurrente atacando las conclusiones de hecho formuladas por el tribunal sentenciador. No es este el momento para que consideremos el efecto de la prueba presentada por las partes. Al celebrarse un nuevo juicio el tribunal de instancia apreciará y aquilatará dicha prueba a la luz de las doctrinas sentadas por este Tribunal en casos de esta naturaleza.(³)

*Por los motivos expuestos se revocará la sentencia dictada por el Tribunal Superior en 20 de agosto de 1954 y se ordenará la celebración de un nuevo juicio.*

---

(³) Véase *Blanes* v. *González,* 60 D.P.R. 567.