ENA AIDA ESPÉNDEZ DE PERICÁS y ENA ELBA ESPÉNDEZ DE UMPIERRE, peticionarias, EX parte; VIRGINIA SÁNCHEZ VDA. DE ESPÉNDEZ, apelante.

*Número:* 12239. *Resuelto:* 15 de mayo de 1962

438

*Víctor A. Coll,* abogado de la apelante; *Juan L. Cruz Rosario, Héctor González Blanes* y *Aldo Segurola de Diego,* abogados de las apeladas.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Rigau.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Dentro del juicio de administración judicial de los bienes relictos al fallecimiento de don Ernesto Espéndez Mandés se promovió una controversia sobre la naturaleza ganancial o privativa de ciertos inmuebles. Por estipulación de los interesados se practicó prueba sobre el particular, y sometida la cuestión a decisión, el tribunal de instancia resolvió que eran bienes privativos del testador una finca rústica de aproximadamente 76 cuerdas sita en el barrio Sabana Llana, de Río Piedras, y un solar y edificación en la Calle Brumbaugh Núm. 1176 del mismo municipio.[1] Determinó además, que no se había destruido la presunción ganancial

---

[1] El carácter privativo de una finca de 3.50 cuerdas sita en el barrio Sabana Llana no fue objeto de discusión por tratarse de un bien aportado por el testador a su último matrimonio.

de los otros bienes del caudal, a saber: dos fincas de 25 y 7 cuerdas en el barrio Sabana Llana y una casa residencia edificada en la finca privativa de 3.50 cuerdas a que nos referimos en el escolio 1. Contra la parte de la sentencia que reconoció el carácter privativo de los bienes mencionados, la cónyuge viuda doña Virginia Sánchez entabló recurso de apelación.

. El testador Espéndez falleció en 20 de julio de 1953 bajo testamento abierto otorgado ocho meses antes, en el cual, además de relacionar los bienes que poseía, manifestó que "es únicamente privativo de él una parcela de terreno de tres cuerdas y media . . . con una casa que en la misma está enclavada, ($^2$) y expresó que el resto de sus bienes "han sido adquiridos con bienes comunes de él y de su actual esposa doña Virginia Sánchez."

El segundo matrimonio contraído por Espéndez con doña Iluminada Crespo fue disuelto mediante sentencia de divorcio dictada en 2 de junio de 1944. Treinta días después contrajo terceras y últimas nupcias con doña Virginia Sánchez. La sociedad de gananciales del segundo matrimonio fue liquidada en 6 de octubre de 1944, adjudicándosele al testador los siguientes bienes: a) una finca rústica de 188.109 cuerdas sita en los barrios Maguayo y Espinosa, de Dorado y Vega Alta, que vendió en 1 de agosto de 1945 por precio de $31,000; ($^3$) b) una finca de 3.50 cuerdas en el Barrio

---

($^2$) Identificó el carácter privativo de este inmueble en la siguiente forma: "La parcela le fue adjudicada por la escritura de división de bienes y liquidación de gananciales entre él y su anterior esposa doña Iluminada Crespo. La casa la construyó con dinero privativo de él." Sin embargo, según hemos expuesto, el tribunal a quo concluyó que la edificación era ganancial. No se recurrió contra esta parte de la sentencia.

($^3$) A la fecha de la liquidación de gananciales esta finca estaba gravada con una hipoteca a favor del Federal Land Bank of Baltimore, reducida a $3,606.86. Este crédito hipotecario fue cancelado al constituirse en 22 de junio de 1945 una primera hipoteca a favor de dicha institución de crédito agrícola por $9,200 y una segunda hipoteca de $5,800 a favor del Land Bank Commissioner. Del precio de venta de $31,000, el comprador retuvo $15,000 para satisfacer estas hipotecas, le entregó $6,000 al vendedor Espéndez en el acto del otorgamiento y el remanente

440

Sabana Llana, de Río Piedras; c) un solar con edificación en la Urbanización Las Palmas, de Santurce;(⁴) d) ganado;(⁵) e) un automóvil valorado en $1,500; f) una participación en un negocio conocido como Hotel American, que vendió en 12 de junio de 1945;(⁶) g) una guagua valorada en $600; y, h) $1,300, producto de la venta de un automóvil.

Después de contraído el tercer matrimonio, Espéndez adquirió los bienes en relación con los cuales se plantea la controversia en el presente recurso: a) en 24 de octubre de 1944, un solar de 668.15 metros cuadrados, por precio de $2,500 y en 5 de diciembre del mismo año, un solar colindante de 142.50 metros cuadrados, por $500.   En 12 de junio de 1947, Espéndez y su esposa hipotecaron el solar de 668.15 metros cuadrados y en la escritura de hipoteca se hizo constar que en el mismo enclavaba una casa de dos plantas de concreto armado.   Esta edificación se construyó entre octubre de 1944 y junio de 1947;(⁷) y, b) en 19 de diciembre de 1944, una finca de 75.96 cuerdas situada en Sabana Llana, por precio de $13,000.(⁸)

de $10,000 fue pagado cuando se cancelaron otras cargas y gravámenes que aparecían del Registro de la Propiedad.   No se probó la fecha en que el vendedor recibió este remanente.   Esta es una de las numerosas lagunas que existen en la prueba presentada.

(⁴) El testador dispuso de este inmueble antes de su muerte.   Una vez más la prueba no establece la fecha ni el importe del precio de venta.

(⁵) La escritura de división y liquidación de gananciales guarda silencio sobre el valor del ganado adjudicado al testador.   La prueba oral consistente en la atestación de la cónyuge divorciada tiende a establecer que había muchas cabezas, pero no se precisó el número.   Tampoco se presentó prueba sobre la fecha en que se dispuso de este activo.

(⁶) El precio neto de la venta fue de $10,500, de cuya suma correspondía al testador la cantidad de $4,305.00, o sea la proporción que representaba su aportación de $6,250.00 en el capital social de $15,000 de la sociedad Marquez y Compañía.

(⁷) No hemos podido determinar la fecha en que se construyó esta edificación ni el costo de la misma, pues la prueba está huérfana de toda referencia sobre estos extremos.

(⁸) Del precio indicado de $13,000, el comprador retuvo $4,000 para satisfacer una hipoteca que fue posteriormente cancelada en 3 de diciembre de 1945.   Pagó en el acto del otorgamiento la suma de $9,000.00.

La declaración de ingresos del señor Espéndez para el año natural 1944 informa un "ingreso neto de varios negocios" por $3,262.82, y en 1945, un ingreso bruto de $5,803.09, por concepto de sueldo ($550), beneficio en la venta de la finca de 188.109 cuerdas y la participación en el Hotel American ($4,353.51), y de utilidades producidas por los negocios Hotel América y Savoy Club ($899.58). La prueba revela que para esta fecha Espéndez explotaba con otras personas una serie de negocios de bar y cabaret en distintos sitios del área metropolitana, y que además había adquirido a principios del año 1946 una tienda conocida con el nombre de "El Estilo" que vendió en 3 de diciembre de 1946.(⁹) ▮

Después de relacionar los bienes que son propios de cada cónyuge y los que son gananciales, artículos 1299 y 1301 del Código Civil, 31 L.P.R.A. secs. 3631 y 3641, el artículo 1307 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 3647, que es la piedra angular de este litigio, dispone que "Se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer." Castán indica que esta presunción responde al deseo de resolver las dudas que con facilidad y frecuencia se suscitan acerca de la procedencia y carácter de determinados bienes, y "al mismo tiempo evitar que las simples manifestaciones de los interesados puedan encubrir verdaderas dona-

---

(⁹) El precio de venta fue de $14,544.84, pero los vendedores esposos Espéndez se obligaron a pagar $1,355.72 de dos obligaciones constituidas a favor de Manuel Otero. El precio neto fue, por tanto, de $13,189.12. El tribunal de instancia concluyó erróneamente que el importe neto recibido fue de $7,467.53 al considerar que el precio de venta fue $14,000 y que la compradora había retenido $7,467.53 para pagar deudas del negocio, cuando en realidad, con excepción de la obligación por $1,355.72 del señor Otero, dicha compradora asumió el pago de las deudas *en adición* al precio. Además, aparentemente la compradora no pagó el precio total en el acto de la compraventa, pues en declaraciones de ingresos posteriores Espéndez aparece recibiendo intereses de dicha compradora, que presumimos se relacionan con algún precio aplazado.

. No hay prueba sobre la fecha exacta de la adquisición del negocio "El Estilo" ni de la suma que se invirtió para ello.

ciones entre cónyuges." [10]    Espín más llanamente expresa que la presunción deriva su fundamento del deseo de "prevenir posibles actuaciones fraudulentas por parte de los cónyuges frente a terceros." [11]    En igual sentido se pronuncian Puig Peña, [12]   Scævola, [13]   Santamaría, [14]   y Manresa. [15]    De ahí que se haya establecido no solamente que el peso de la prueba para desvirtuar el presunto carácter ganancial de bienes adquiridos a título oneroso durante el matrimonio incumbe a quien sustenta su naturaleza privativa, *Blanes* v. *Mestre*, 83 D.P.R. 392 (1961); *Valderrama* v. *Lacén*, 83 D.P.R. 60 (1961); *Sucn. Escalera* v. *Barreto*, 81 D.P.R. 596, 604 (1959); *Babilonia* v. *Registrador*, 62 D.P.R. 688 (1943); *Alum* v. *Registrador*, 37 D.P.R. 894 (1928), sino que la prueba debe ser completa y suficiente para desvanecerla, [16] y por eso la jurisprudencia ha sido exigente, de modo riguroso, en cuanto a la calidad y cantidad de prueba que se requiere para ello. [17]    Mas, cuando la controversia sobre la naturaleza de los bienes es entre los cónyuges o entre los herederos de uno y el supérstite, sin que se lesionen derechos de terceros que hayan podido

[10] Derecho Civil Español, Común y Foral (1954), tomo 5⁰, vol. 1⁰, pág. 213.

[11] Derecho Civil Español (1956), vol. 4, pág. 151.

[12] *Tratado de Derecho Civil Español (1953)*, tomo II, vol. I, pág. 304.

[13] *Código Civil (1905)*, tomo XXII, págs. 232, 233.

[14] *Comentarios al Código Civil (1958)*, tomo II, págs. 422–423.

[15] *Comentarios al Código Civil Español (1950)*, tomo 9, págs. 595–599.

[16] Manresa, *op. cit.*, pág. 598.

[17] Espín, *op. cit.*, pág. 151. En un artículo publicado en la Revista de los Tribunales el año 1919, pág. 529, el autor Marcos A. Nogueroles sustenta que para establecer el carácter privativo de bienes adquiridos durante el matrimonio se requiere invariablemente (1) que se exprese en el documento de adquisición que la compra se hace para uno de los cónyuges; y, (2) que se justifique que el precio de esta adquisición es privativo del cónyuge a cuyo nombre se hace la compra. Véanse, no obstante, los artículos 95 y 96 del Reglamento de la Ley Hipotecaria Española de 1947 y el comentario de Roca Sastre sobre el efecto de estas disposiciones sobre la presunción del artículo 1407 del Código Civil Español en *Derecho Hipotecario* (1948), vol. III, págs. 167–170. Véase, además, Manuel González Enríquez, *Repercusiones Registrales del Artículo 1407 del Código Civil*, Revista de Derecho Privado, (1953), tomo 37, pág. 817.

contratar confiados en la presunción favorable a la ganancialidad, entonces desaparece el rigor y la exigencia de la prueba y basta con que se establezca a satisfacción del juzgador que las circunstancias indican que los bienes han sido adquiridos mediante la inversión de bienes privativos y no a costa del caudal común, sin que sea indispensable identificar la procedencia exacta de los fondos invertidos o reinvertidos para la adquisición. Scævola fija claramente el alcance de la presunción cuando dice que "no se entienda que por el solo hecho de haber duda los bienes han de ser gananciales . . ." y añade que "la presunción del artículo 1407 *no es aplicable a los casos de duda, sino a los en que falte prueba en contrario.*"[18] Es por eso que la función principal del tribunal en estos casos es apreciar, por el conjunto de la prueba, la forma en que vinieron al matrimonio los bienes objeto de discusión. ▇

Nuestra jurisprudencia se ha hecho eco de esta distinción sobre el grado de prueba necesario para desvirtuar la presunción que comentamos. Así, en el orden registral, para evitar perjuicio a terceros, ha sido exigente y se ha requerido para la inscripción como privativos de los bienes adquiridos a título oneroso durante el matrimonio que ello se demuestre cumplidamente y a satisfacción del Registrador mediante la documentación que en forma suficiente establezca la procedencia privativa de los fondos invertidos, *González* v. *Registrador,* 73 D.P.R. 484 (1952) ; *Vilella* v. *Registrador,* 64 D.P.R. 424, 427 (1945) ; *Díaz* v. *Registrador,* 63 D.P.R. 270, 273 (1944) ; *Rucabado* v. *Registrador,* 50 D.P.R. 375, 378 (1936) ; *Capó* v. *Registrador,* 46 D.P.R. 523 (1934) ; *Cabassa* v. *Registrador,* 38 D.P.R. 251 (1928).. Específicamente en *Blanes* v. *González,* 60 D.P.R. 566, 573 (1942), reiterado en *Cruz* v. *González,* 72 D.P.R. 308, 318 (1951), hemos resuelto que cuando la controversia es entre marido y mujer los tri

---

[18] Scaevola, *op. cit.,* pág. 233.

bunales no deben ser tan exigentes en cuanto a la suficiencia de la prueba. ▮

¿Es suficiente la prueba aducida en el presente caso para desvanecer la presunción de ganancialidad? En primer término, es preciso indicar que la manifestación del testador sobre la naturaleza de los bienes contenida en su testamento no es definitiva sobre el particular y que está sujeta a ser impugnada con prueba que establezca el carácter privativo de la inversión. *Guerrero* v. *Sucn. Vilá*, 34 D.P.R. 616, 619 (1925).([19]) Apreciada en conjunto, convenimos con el tribunal de instancia en que la evidencia señala en forma preponderante que la finca de 75.96 cuerdas sita en el barrio Sabana Llana no se adquirió a costa del caudal común de la sociedad de gananciales. La compra se efectuó apenas cinco meses después de contraído el matrimonio y dos meses después de liquidada la anterior sociedad conyugal; los ingresos confesados por el testador para todo el año 1944 no llegaron a $3,200; y todo indica que cuando se realizó la liquidación Espéndez disponía de algún dinero efectivo pues en el mismo acto le entregó a su segunda esposa $4,500 para pagar una hipoteca que gravaba el inmueble que se le adjudicó a ella y $5,000 como transacción por cualquiera obligación que le correspondiera por concepto de alimentos como cónyuge divorciada inocente. Por otro lado, la apelante no hizo el menor esfuerzo para establecer siquiera un indicio sobre la procedencia de los nueve mil dólares del precio pagado, salvo que intentara descansar en la desacreditada e increíble prueba sobre las ganancias obtenidas por su esposo en juegos ilícitos. En *Figueroa* v. *Bayrón*, 75 D.P.R. 897 (1954) consideramos una situación similar y resolvimos que no cabía aplicar la presunción de ganancial al caso de una casa adqui-

---

([19]) Véase, sobre la situación contraria—confesión del carácter privativo de bienes adquiridos a título oneroso después del matrimonio—la Sentencia del Tribunal Supremo de España de 2 de febrero de 1951 (33 Jurisprudencia Civil, pág. 430) y Valverde, *Tratado de Derecho Civil Español* (1938), tomo IV, págs. 368–369.

rida días después de un matrimonio cuando la prueba demostraba que la única fuente de ingresos del caudal conyugal la constituía un restaurante que el marido ya tenía cuando se casó, y nada había en la prueba que pudiera ser creída en el sentido de que el dinero de la compra fuera en forma alguna el producto de la empresa o esfuerzo común de los cónyuges después del matrimonio. Véase, *Figueroa* v. *Aponte*, 45 D.P.R. 11 (1933). ■

Ahora bien, en cuanto a la casa edificada entre 1944 y 1946 en el solar de la Calle Brumbaugh, la prueba de la parte apelada fue sumamente débil. No se estableció la fecha de la construcción ni el valor de la construcción en forma que nos permita concluir que la sociedad de gananciales no disponía de los fondos necesarios para su edificación. Tampoco podemos aceptar que el negocio de la sociedad de gananciales conocido como "El Estilo" se adquiriera con fondos privativos, de forma que al disponerse del mismo su producto supuestamente invertido en la construcción del referido edificio según se especula por el tribunal a quo, convirtiera dicho edificio en un bien privativo por sustitución o subrogación. Véase, *Robles* v. *Guzmán*, 67 D.P.R. 718 (1947). Sin embargo, por las razones expuestas en cuanto a la finca de 75.96 cuerdas, no alteraremos la conclusión del tribunal de instancia sobre el carácter privativo de los solares de la Calle Brumbaugh, pero advirtiendo que, según dispuesto en el artículo 1304 del Código Civil, 31 L.P.R.A. sec. 3644 según interpretado en *Salazar* v. *Registrador*, 27 D.P.R. 63 (1919); *Sucrs. de Santos Alonso* v. *Registrador*, 26 D.P.R. 831 (1918); *Matheu* v. *Murillo*, 25 D.P.R. 329 (1917), cuando las edificaciones se construyen a costa del caudal común en suelo de la exclusiva propiedad de uno de los cónyuges, ambos —el suelo y las edificaciones—pasan a tener la condición de gananciales, reconociéndose en liquidación un crédito por el importe del costo del solar al cónyuge que lo aportó a la sociedad de gananciales.

Los otros errores señalados por la apelante relacionados con la admisibilidad de evidencia no fueron cometidos.

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 30 de agosto de 1956.*