El Pueblo de Puerto Rico, demandante y apelado, *v.* Hernán Corales Irizarry, acusado y apelante.

*Número:* CR-77-93      *Resuelto:* 31 de mayo de 1978

*Pedro A. Otero Fernández,* abogado del acusado; *Héctor A. Colón Cruz, Procurador General, Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

"[C]on las contribuciones se sufraga y asegura la civilización." Holmes: *Compañía de Tabacos* v. *Collector of Internal Revenue,* 275 U.S. 87, 100 (1927). Esta apelación versa sobre la juridicidad de una convicción penal en nuestro ordenamiento contributivo. Pone de manifiesto cómo una persona, beneficiaria directa e indirecta de los servicios gubernamentales, intencional y fraudulentamente deja de cumplir sustancialmente con el deber ciudadano básico de aportar al erario, olvidando que en una democracia "[e]l dinero proveniente del impuesto, es, en consecuencia, un elemento indispensable de la economía pública, de la vida misma del Estado. Sin medios pecuniarios, no se concibe su existencia." Tamagno, *El Contribuyente,* 17 (1953). Al disponer del recurso, nos enfrentamos a ". . . los objetivos de la ley con la realidad destinataria de la misma. Como ha escrito el profesor Ursicino Alvarez, 'la investigación del jurista no se puede desarrollar en la soledad sino al contacto con la patología vital de la sociedad y al calor de las realidades sociales'." Albiñana García-Quintana, *El Sistema Fiscal en España,* pág. X (1974).

Hernán Corales Irizarry y su esposa Emma Ramírez rindieron la planilla de contribución sobre ingresos para el año 1967, e informaron como ingreso bruto ajustado la cantidad de $13,213.26. Investigados administrativamente por el Departamento de Hacienda, se descubrió que Corales había efectuado aproximadamente 80 depósitos en su cuenta corriente

en el Banco de Economías y Préstamos, sucursal de San Germán, por un total de $305,169.30 durante el período comprendido entre enero y octubre de 1967; y que su esposa había realizado como 40 depósitos montantes a $114,781.39 en otra cuenta corriente existente a nombre de ella en el Banco de Ponce, sucursal de Cabo Rojo, durante el mismo período. Tales depósitos ascendieron a la cantidad de $419,950.69.

Corales fue requerido por el Sr. Víctor M. Navarro, inspector del Departamento de Hacienda, que explicara el origen de los fondos para esos cuantiosos depósitos bancarios con miras a determinar su verdadero ingreso tributable. Este se negó a suministrar información alguna al respecto manifestándole que no llevaba libros de contabilidad y que carecía de récords en que basar la preparación de su planilla, porque se habían quemado en un fuego que ocurrió en sus oficinas situadas en el Banco de San Germán. (T.E., Tomo 2, págs. 86 y 94.) Ante esta situación, el Departamento de Hacienda procedió a estimarle y notificarle el ingreso tributable mediante el uso de uno de los tres métodos aceptados cuando el contribuyente no mantiene libros de contabilidad o cuando los libros son inadecuados o se han perdido o destruido, y no hay evidencia secundaria para precisar de otro modo dicho ingreso.

Una vez consideradas las deducciones reclamadas por Corales en su planilla, el cómputo final arrojó que él y su esposa habían tenido para el año 1967 un ingreso neto aproximado de $350,000.00, por lo que adeudaban al erario público la cantidad de $270,000.00 por concepto de contribuciones, y no la suma de $1,686.92 computada y reportada a base de un ingreso bruto ajustado de $13,213.26.

Subsiguientemente, por tales hechos Corales fue acusado del delito de evasión contributiva tipificado en la Sec. 145(b) de la Ley de Contribuciones sobre Ingresos de Puerto Rico. [1]

---

(1) Dispone:

"(b) *Dejar de Recaudar y Entregar en Pago la Contribución, o In-*

El jurado rindió veredicto de culpabilidad y el tribunal lo sentenció a una pena de uno (1) a cinco (5) años de prisión.

No conforme, plantea los errores que discutiremos a continuación.

PRIMERO: "Erró el Honorable Tribunal de Instancia, al permitir testimonio del Agente Jefe de la Sección Control de Documentos, Francisco López, declarar sobre el contenido de la Planilla de Contribución sobre Ingresos del supuesto acusado, sin haberse sentado bases algunas para admitir dicho testimonio."

La tesis del apelante es que no se debió admitir el testimonio del Sr. Francisco López, Jefe de la División de Expedientes y Control del Negociado de Contribución sobre Ingresos,(²) en torno al contenido de una planilla alegadamente radicada por él y su esposa sin que mediara previamente una identificación adecuada del referido documento acreditativa de haber sido rendida por él. A tal efecto argumenta que es "tambaleante" la identificación realizada por López y que la forma en que la planilla fue introducida en evidencia "carecía de la fortaleza que la ley exige no estableciéndose una conexión entre la planilla y el acusado que estaba respondiendo de delito." Basa su contención en que el testigo durante el contrainterrogatorio, manifestó que no sabía quién había radicado la planilla, ni quién le había hecho ciertas

---

*tentar Derrotar o Evadir la Contribución.*—Cualquier persona obligada bajo este Subtítulo a recaudar, dar cuenta de, y entregar en pago cualquier contribución impuesta por este Subtítulo, que voluntariamente dejare de recaudar o de dar cuenta de y entregar en pago, fielmente, dicha contribución y cualquier persona que voluntariamente intentare de algún modo evadir o derrotar cualquier contribución impuesta por este Subtítulo o el pago de la misma, en adición a otras penalidades provistas por Ley, será culpable de delito grave y castigada con multa no mayor de $10,000.00 ó reclusión por no más de 5 años en la institución penal que designe el Secretario de Justicia, o ambas penas, más las costas del proceso." 13 L.P.R.A. sec. 3145(b).

(²) López había ocupado además en el Negociado de Contribuciones sobre Ingresos posiciones tales como investigador de Contribuciones sobre Ingresos, Supervisor de la Oficina de Investigaciones, y Jefe de la Sección de Cuentas de Récord y Control. (T.E., Tomo 2, pág. 5.)

marcas, como tampoco supo decir el nombre de todas las personas que habían intervenido con tal documento desde su radicación. En adición resalta el hecho de que el testigo afirmó que con anterioridad había visto la planilla una sola vez.

■ No tiene razón. La prueba establece que López identificó satisfactoriamente la planilla del apelante y su esposa para el año 1967, la cual fue ofrecida en evidencia por el Ministerio Fiscal.([3]) (T.E., Tomo 2, págs. 7, 8, 21, 33, 34, 46.) Su declaración sobre su contenido era admisible. Wharton, *Criminal Evidence*, 13th ed., Vol. 3, sec. 531, pág. 31; véase: *Castillo* v. *Tribl. Examinador*, 81 D.P.R. 746, 752 (1960). Lo atestado por éste en el contrainterrogatorio no afecta la adecuacidad de la identificación del documento. En primer lugar, la expresión de López referente a que no sabía quién había radicado la planilla en cuestión, vista en el contexto en que fue dada, nos mueve a concluir que más bien expresaba que no tenía conocimiento directo de quién había radicado la planilla para la fecha específica en que ésta fue entregada en el Departamento de Hacienda. En segundo lugar, expresó que las marcas sobre la planilla, correspondían al cotejo administrativo realizado en Hacienda rutinariamente, aclarando que ello no afectó ni alteró los cómputos originales consignados por el apelante en maquinilla. (T.E., Tomo 2, págs. 10, 11, 23, 31, 32 y 33.) En tercer lugar, es comprensible que el testigo no pudiera decir de memoria el nombre de todas las personas que habían intervenido con dicha planilla. En el complejo trámite administrativo que se sigue, este tipo de documento desde que es radicado en Hacienda, es normal y explicable que intervengan distintos funcionarios en los diferentes procesos burocráticos establecidos, tales como recibo, numeración, clasificación, enumeración, li-

---

([3]) Cabe señalar que posteriormente Víctor Manuel Navarro, testigo de cargo, identificó la planilla en cuestión, atestando sin duda que era la radicada por el apelante. Este testigo, en calidad de Inspector del Negociado de Contribuciones sobre Ingresos, era quien había investigado la planilla del apelante. (T.E., Tomo 2, pág. 75.)

quidación y otros. (T.E. págs. 16–22.) Y finalmente, si bien es cierto que el testigo expresó que había visto la planilla una sola vez, éste se refería al original, ya que de inmediato aclaró que había visto una copia escasamente una semana antes. (T.E., Tomo 2, págs. 23, 24 y 25.)

Tampoco es atendible el argumento relativo a que la planilla no fue conectada con el acusado. La planilla en cuestión había sido radicada en el Departamento de Hacienda bajo el nombre y firma de Hernán Corales Irizarry, conteniendo su dirección, número de cuenta, ocupación, nombre y apellidos de su esposa, y el hecho de que había recibido ingresos de su patrono, el Banco de San Germán. En estas circunstancias es de aplicación la presunción controvertible establecida en el inciso 25 del Art. 102 de la Ley de Evidencia (32 L.P.R.A. sec. 1887(25)), sobre identidad de persona, de la identidad de nombre. *Pueblo* v. *Huertas Soto*, 90 D.P.R. 170 (1964); *Pueblo* v. *García*, 48 D.P.R. 444 (1935); *Pueblo* v. *Rivera*, 26 D.P.R. 275 (1918).

SEGUNDO ERROR: "Erró el Honorable Tribunal de Instancia al admitir como Exhibit, a través del testimonio de Blanca Herrero Marrero, documentos que constituían copias fotostáticas de copias fotostáticas, sin haberse sentado las bases para ello."

El tribunal de instancia admitió unas copias fotostáticas de hojas de depósitos del Banco de Economías y Préstamos, Sucursal de San Germán, acreditativas de depósitos hechos por el apelante en una cuenta especial, luego que fueron identificadas por la testigo Blanca Herrero Marrero, funcionaria de la Secretaría del Tribunal Federal, quien las tenía bajo su custodia debido a un procedimiento que se seguía contra el apelante en el Tribunal Federal. (T.E., Tomo 2, págs. 51–52.)

El apelante alega que tales copias son inadmisibles porque no constituyen la mejor evidencia. No tiene razón. El Art. 24 de la Ley de Evidencia, en lo pertinente reconoce la admisibilidad de copias fotostáticas: ". . . cuando el original

se hubiere extraviado o destruido, o estuviere fuera de la jurisidicción del tribunal." (32 L.P.R.A. sec. 1667.) Contiene una de las excepciones al principio denominado "Regla de la Mejor Evidencia" que en síntesis proclama la inadmisibilidad de evidencia secundaria del contenido de un escrito, salvo que satisfactoriamente se explique la omisión de producir el original.

En el caso de autos está presente esta circunstancia ya que la testigo Herrero expuso que desconocía el paradero de las hojas originales de depósito, pues en el expediente ante el Tribunal Federal sólo se encontraban copias de hojas de depósito (*deposit slips*) (T.E., Tomo 2, págs. 53, 54, 61). Atestó que infructuosamente realizó una intensa búsqueda en el expediente para localizar los originales. (T.E., Tomo 2, págs. 54–55, 58, 63, 66, 68, 71.) Añadió que ésa era la razón por lo que el Ministerio Fiscal presentaba copias fotostáticas de las únicas copias de las hojas de depósito (*deposit slips*) existentes en la Corte Federal. (T.E., Tomo 2, págs. 61, 62, 63.)

También el Sr. Santiago Ortiz Ruíz, gerente del Banco Economías, sucursal de San Germán, testificó que a pesar de que para el 1967 tenía bajo su custodia los originales de las hojas de depósito de la cuenta especial del apelante, posteriormente perdió el contacto con ellas ya que le fueron requeridas al banco para un caso que se ventilaba en el Tribunal Federal, y que desde ese instante no las había vuelto a ver. (T.E., Tomo 2, págs. 150–151.)

■ Con dichos testimonios se probó cabalmente que los originales de las hojas de depósito existieron, pero que se habían extraviado, y no pudieron ser encontradas a pesar de haberse realizado varias búsquedas. En consecuencia eran admisibles las copias fotostáticas presentadas. *Santiago* v. *Martínez*, 72 D.P.R. 934, 937 (1951) ; *Armstrong* v. *Jones*, 44 D.P.R. 762, 772–773 (1933) ; *Torres* v. *P.R. Racing Corporation*, 40 D.P.R. 441, 447 (1930) ; Wharton, *Criminal Evi-*

*dence*, 13th ed., Vol. 3, Sec. 554, págs. 64–65; (⁴) Jones, *On Evidence*, 6ta. ed., Vol. 2, Secs. 7.13 y 7.14, págs. 114–118. Quedó establecida la autenticidad de tales copias.

TERCERO: "Erró el Honorable Tribunal de Instancia al no permitir que el testigo Víctor Manuel Navarro fuera repreguntado sobre hechos materiales, relevantes a la cuestión planteada.

Erró el Honorable Tribunal de Instancia al no permitir contrainterrogar al Sr. Santiago Ortíz Ruíz, sobre materia de defensa que tenía el acusado a su favor."

Comencemos a discutir el señalamiento referente al contrainterrogatorio de Víctor Manuel Navarro. Este testigo era el inspector del Negociado de Contribuciones Sobre Ingresos que investigó la planilla del apelante. En su primera comparecencia declaró sobre las gestiones que realizó durante la investigación, así como del método que utilizó para determinar los ingresos del apelante (T.E., Tomo 2, págs. 72, 76, 81, 101). Al terminar el examen directo en su primer turno, el Ministerio Público anunció que se proponía, luego de desfilada el resto de la prueba de cargo, presentarlo nuevamente, pero esta vez como perito. (T.E., Tomo 2, págs. 101–102). De inmediato el juez le ofreció a la defensa la opción de contrainterrogar al testigo sobre lo que había declarado hasta ese momento y luego contrainterrogarlo sobre lo que declarara en comparecencia, o esperar la segunda deposición y contrainterrogarlo sobre todo lo declarado por el testigo. La defensa prefirió la primera alternativa y procedió acto seguido a contrainterrogarlo. (T.E., Tomo 2, págs. 103–104).

Subsiguientemente, en su segunda comparecencia, Navarro presentó unos diagramas ilustrativos de los gastos e ingresos reportados en la planilla del apelante para el 1967, y

---

(⁴) Expone Wharton, *supra:*

". . . una *copia fotostática* de un documento escrito, clasificada de ordinario como evidencia secundaria, no es admisible *a menos que se demuestre que el original se ha perdido o destruido*, que el original se encuentra en poder de la parte contraria y ésta dejare de presentarlo, luego de haber sido notificada para que lo produjera, o cuando el original estuviere fuera de la jurisdicción del Tribunal." Págs. 64–65. (Bastardillas nuestras.)

de una relación de todos los depósitos realizados por éste en la cuenta especial que poseía en el Banco Economías. (T.E., Tomo 6, págs. 10–11.) Luego de ser admitidos, el testigo circunscribió su declaración a explicar el contenido de los mismos. (T.E., Tomo 6, págs. 40, 41, 44, 102, 106–116, 121–126.) Llegado el turno para el contrainterrogatorio, la defensa pretendió repreguntar al testigo sobre las gestiones que había realizado durante la investigación de la planilla del acusado a pesar de que ello no había sido cubierto en el interrogatorio directo correspondiente a esta segunda declaración, y sí en la primera en donde la defensa lo había contrainterrogado ampliamente. Por esta razón el tribunal no lo permitió. (T.E., Tomo 6, págs. 103–105, 116–117, 123–124, 125, 127–134.)

▋ Ante este trámite resulta inmeritoria la posición del apelante. El juez sentenciador actuó dentro de los límites razonables evitando repeticiones innecesarias. Reiteramos que no hemos de intervenir con la discreción judicial de los foros de instancia efectuada con ánimo de lograr un adecuado balance entre la búsqueda de la verdad y la enojosa lentitud de los procedimientos debido a interrogatorios prolongados e innecesarios por preguntas repetitivas. *Wolff* v. *Hernández*, 76 D.P.R. 650, 666–667 (1954); *Pueblo* v. *Camacho*, 69 D.P.R. 358, 360–361 (1948); *Pueblo* v. *Vázquez*, 68 D.P.R. 67, 83 (1948); *Durán* v. *Sucn. Durán*, 53 D.P.R. 750, 754 (1938); *Pueblo* v. *Gómez*, 45 D.P.R. 812, 813–814 (1933); *Vélez* v. *Iturregui*, 44 D.P.R. 487, 490–491 (1933); *Pueblo* v. *Román*, 42 D.P.R. 642, 645 (1931); *Pueblo* v. *Munera*, 39 D.P.R. 295, 301–303 (1929); *Pueblo* v. *Aponte*, 26 D.P.R. 604, 605–606 (1918); y *Pueblo* v. *Español*, 16 D.P.R. 213, 221 (1910).

Tampoco se cometió error en cuanto a su contención de que no se le permitió contrainterrogar al testigo Santiago Ortíz Ruíz sobre materias que le beneficiaban. Del análisis de la transcripción de la evidencia se desprende que la defensa tuvo amplia oportunidad de contrainterrogarlo. (T.E., Tomo 3, págs. 52–88.)

CUARTO: "Erró el Honorable Tribunal al negarse a impartir instrucciones específicas solicitadas por el apelante.

Erró el Honorable Tribunal al no dar instrucciones específicas aclarando los conceptos de depósito, ingresos, y lo que constituía ingreso neto tributable, equiparando así los depósitos como sinónimo de ingresos."

El apelante se refiere a la siguiente instrucción denegada por el tribunal:

"Los depósitos bancarios por sí solos no constituyen ingresos. Se requiere que el inspector haga un análisis de la procedencia de los fondos para luego imputar tales depósitos como ingresos. Un depósito bancario puede surgir como consecuencia de un préstamo, una transferencia de fondos, que haya efectuado el contribuyente de una cuenta a otra, o de dinero recibido por concepto de una donación o herencia los cuales necesariamente no son ingresos conforme la Sección 22(b) 3 de Ley Contribución Sobre Ingresos, o de ingresos previamente declarados por el contribuyente en sus planillas de años anteriores al año que se hizo el depósito. En este caso el Fiscal viene obligado a probar que los depósitos eran ingresos netos tributables."

Su teoría es que lo anterior constituye una exposición adecuada del derecho aplicable y que la omisión del tribunal en impartirlos le privó del debido proceso de ley y de su derecho a un juicio justo e imparcial.

Hemos examinado la totalidad de las instrucciones dadas por el tribunal de origen, y resolvemos que el error no fue cometido. Durante el proceso quedó establecida la existencia de tres métodos aceptados en el derecho contributivo para computar el ingreso tributable cuando el contribuyente no conserva libros de contabilidad, son inadecuados o desaparecen. Los métodos son los siguientes: (1) el de aumento en las ganancias netas o incremento en el capital; (2) el de ventas o entradas brutas (método de porcentaje); y (3) el método de depósitos bancarios.(5) Las autoridades en la materia

---

(5) Los siguientes casos constituyen ejemplos de la aplicación del método de depósitos bancarios: *Percifield* v. *United States*, 241 F.2d 225 (1957); *United States* v. *Venuto*, 182 F.2d 519 (1950).

comparten este criterio: Mertens, *Law of Federal Income Taxation,* Vol. 2 (revisado en 1974), Sec. 12.12, pág. 52; Chommie, *Federal Income Taxation,* págs. 678–680, West Pub. Co. (1968); Duke, *Prosecutions For Attempts To Evade Income Tax: A Discordant View of a Procedural Hybrid,* 76 Yale L.J. 1, 13 (1966); Schmidt, *Reconstruction of Income,* 18 Tax L. Rev. 23 (1962); Schmidt, *Reconstruction of Income* (Second Installment), 19 Tax L. Rev. 277 (1963–64); Schmidt, *Hybrid Methods of Reconstructing Income in Criminal Tax Fraud Cases,* 47 A.B.A.J. 560 (1961); Note, *Suspicion Versus Conviction in the Commissioner's Computation of Income,* 98 U. Pa. L. Rev. 563 (1950). Bajo el tercero "se analizan los récords bancarios del contribuyente y se estima el ingreso basándose en los depósitos totales de éste menos las partidas no tributables". [6] Mertens, *supra,* Vol. 2, Sec. 12.12, pág. 76. Se parte de la premisa o hipótesis de que los depósitos constituyen ingresos tributables a menos que el contribuyente demuestre que los fondos para realizar los mismos provienen de fuentes exentas de contribución, [7]

---

[6] El inspector Víctor M. Navarro, al ser interrogado, describió la utilización del método de depósitos bancarios de la siguiente manera, la cual coincide con su concepción tradicional:

". . . bueno, el sistema que yo utilicé es el que se conoce como el sistema de depósitos bancarios. En primer lugar determiné que el contribuyente tenía dos cuentas bancarias, o sea, que existían cuentas bancarias, dos cuentas bancarias. En segundo lugar, que el contribuyente o cualquier otra persona que él designara iba depositando periódicamente con cierta frecuencia dinero a esas cuentas bancarias. En tercer lugar, que esas cuentas bancarias excedían, pero por mucho los ingresos que él había declarado en la planilla del '67. Y en tercer lugar, que existían fuentes de ingresos de las cuales podían proceder esas diferencias entre dinero depositado y el dinero declarado. Tuve la precaución de buscar fuentes que no constituyeran ingresos bajo la Sección 23, como premio de la Lotería, si se había pegado en la lotería, si había recibido algún dinero en herencia, si había vendido alguna propiedad por el mismo costo que la había adquirido y no encontré ninguna de esas fuentes no contributables. [*sic*] Y así fue que yo determiné la diferencia entre el dinero depositado y el dinero declarado." (T.E., Tomo 2, págs. 100–101.)

[7] Mertens, *supra,* Vol. 10, Sec. 55A.27, págs. 205–207 y Sec. 55A.27a, págs. 210, 218; *United States* v. *Doyle,* 234 F.2d 788 (1956); *Elwert* v. *United States,* 231 F.2d 928 (1956); *Canton* v. *United States,* 226 F.2d

como por ejemplo, de un premio de la lotería. (⁸) Cabe señalar que el único testigo presentado por la defensa, Sr. Ramón Rivera Iturbe, admitió que el sistema de investigación a base de depósitos bancarios es uno aceptado en y fuera de Puerto Rico, aunque a su juicio, el método de incremento de capital es más confiable.

■ Al confrontar el derecho reseñado con la instrucción solicitada, advertimos que la misma era incompleta, amén de ser contraria a la prueba, que demostró más allá de duda razonable, la negativa del apelante a suministrar información a los funcionarios de Hacienda sobre la procedencia de los fondos para los depósitos, la ausencia de libros de contabilidad y récords para la preparación de su planilla, y lo infructuosa de la búsqueda realizada por el inspector Navarro por detectar fuentes no tributables a las cuales pudiera adjudicar la procedencia de los fondos necesarios para hacer tales depósitos. (T.E., Tomo 2, págs. 100–101.) El error no fue cometido.

QUINTO: "Erró el Honorable Tribunal de Instancia al admitir ciertos cartelones con el único y exclusivo propósito de dar como hecho probados los hechos que según la prueba no habían quedado probados más allá de duda razonable."

■ El apelante se limita a señalar el error sin discutirlo. Aparentemente se refiere a ciertas ilustraciones gráficas del inspector Navarro, explicando las diferentes partidas que contenía la planilla. Basta consignar el criterio mayoritario judicial que permite, en casos como el de autos, el uso de ilustraciones gráficas. *Use and Admissibility in Evidence in Federal Tax Evasion Prosecutions, of Summaries of, or Charts Summarizing, Testimony or Exhibits in Evidence,* 16 A.L.R. Fed. 542; Mertens, *supra,* Vol. 10, Sec. 55A.27a,

---

313 (1955); *United States* v. *Smith,* 206 F.2d 905 (1953); *Goe* v. *Comm.,* 198 F.2d 851 (1952), *cert.* den. 344 U.S. 897 (1952); *Gariepy* v. *United States,* 189 F.2d 459 (1951).

(⁸)"Los premios de la Lotería de Puerto Rico estarán exentos de toda clase de contribución." (15 L.P.R.A. sec. 125.)

pág. 213; *Costello* v. *United States*, 350 U.S. 359, 360 (1956) ; *United States* v. *Johnson*, 319 U.S. 503 (1943) ; *United States* v. *Honea*, 556 F.2d 906 (1977). Se reconoce que son de gran ayuda, tanto para el jurado como para el juez, en el mejor entendimiento de las complejas transacciones económicas que de ordinario reflejan planillas contributivas.

SEXTO: "Erró el Honorable Tribunal de Instancia, al imponerle al acusado y su abogado desacatos dentro del mismo procedimiento de la vista del caso."

El señalamiento es inmeritorio y el apelante no lo discute. Sobre el particular el récord sólo refleja que el tribunal inició trámites de desacato contra el acusado y su abogado por una tardanza y luego lo dejó sin efecto en el acto de pronunciar la sentencia (Minuta día 16 de junio de 1975). El incidente ocurrió en ausencia del jurado y en modo alguno afectó los derechos del apelante ni le privó de un juicio justo e imparcial.

Los restantes errores tampoco se cometieron. Los dictámenes de la ilustrada sala sentenciadora negándose a absolver perentoriamente al acusado, y posteriormente aceptar el veredicto de la culpabilidad fueron correctos. El error referente a una indebida intervención del magistrado, no es discutido por el apelante. Independientemente de que ello bastaría para desestimarlo, la lectura del récord taquigráfico refleja que la participación del juez fue dirigida a esclarecer algunos extremos de las declaraciones de los testigos dentro de los límites visualizados en nuestra doctrina elaborada en *Pueblo* v. *Pacheco Baquero*, 103 D.P.R. 95, 97–98 (1974) y *Pueblo* v. *Pabón*, 102 D.P.R. 436, 440 (1974).

Finalmente, respecto a la inaccesibilidad del informe presentencia, la norma que prevalecía a la fecha de la sentencia disponía no sólo su confidencialidad, sino ". . . que no se viola[ba] el debido proceso de ley por el hecho de que el tribunal considere dicho informe sin darle oportunidad al acusado de rebatir su contenido." *Pueblo* v. *Martínez Rivera*, 99 D.P.R. 568, 575 (1971).

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Díaz Cruz concurre en el resultado.