TEXTO COMPLETO DE LA SENTENCIA
Debemos resolver si erró el Tribunal de Primera Instancia al declarar con lugar una demanda de impugnación de deficiencia contributiva a favor de la apelante Panificadora del Sur, Inc., cuando dicha corporación dejó de registrar en sus libros de contabilidad ventas y compras hechas en efectivo. Resolvemos en la afirmativa, por lo que se revoca la sentencia apelada.
La apelante Panificadora del Sur, Inc. (en adelante Panificadora) es una corporación doméstica que se dedica a la elaboración y manufactura de pan y sus derivados, y vende sus productos al público. Su centro de operaciones está en el pueblo de Guayanilla. El año contributivo de la corporación apelante comienza el 1ro. de agosto de un año y termina el 31 de julio del año siguiente. Panificadora rindió planilla de contribución sobre ingresos para los años 1986 al 1988.
En 1990, el Secretario de Hacienda le notificó preliminarmente a Panificadora una deficiencia contributiva para los años 1986, 1987 y 1988, ascendente a $31,304.40. Luego de una vista administrativa solicitada por Panificadora, el Secretario de Hacienda le envió a dicha corporación una notificación final de deficiencia contributiva por la suma de $12,967.43, para los años antes referidos.
La deficiencia en cuestión surge por el hecho de Panificadora haber omitido ingresos en las planillas de contribución sobre ingresos para cada uno de los años contributivos en controversia, en vista de que el ingreso *655 que Panificadora declaraba en sus planillas sólo correspondía a los depósitos efectuados en cuentas bancarias y Panificadora evidenciaba solamente los pagos efectuados con cheques al momento de comprar la materia prima necesaria para su negocio. Es decir, dicha corporación no reflejaba en sus libros de contabilidad las compras de harina que pagaba en efectivo.
Para los años contributivos en controversia, Panificadora efectuó unas compras de harina en efectivo, para las cuales la corporación no conservó documentos ni preparó constancia alguna, tales como facturas o libros de contabilidad. El Secretario de Hacienda solicitó a los suplidores de Panificadora que sometieran certificaciones de las compras en efectivo realizadas por dicha corporación. Un suplidor, Caribe Bakery Supplies Corp., certificó que Panificadora había hecho compras de harina para los años 1986 al 1988 ascendentes a $130,728.75, de los cuales había pagado en cheques la suma de $28,129.00 y en efectivo la suma de $102,599.75. El desglose de las compras en efectivo para los años contributivos en que se determinó la deficiencia contributiva es el siguiente: $29,685.00 para el año 1986; $26,569.50 para el año 1987; y $46,345.25 para el año 1988.
El Departamento de Hacienda determinó una deficiencia contributiva al aplicar un "mark up" de ganancia a dichas compras pagadas en efectivo con el producto de unas ventas en efectivo, las cuales no habían sido reflejadas en los libros de contabilidad de Panificadora. Como resultado de la aplicación de dicho "mark up", surgió un ajuste en los ingresos por concepto de ventas de Panificadora por la suma de $64,212.40 para el año 1986, a base de un 34%; por la suma de $65,736.06 para el año 1987, de un 36%; y por la suma de $74,615.85 para el año 1988, a base de un 38%.
Para sostener la deficiencia contributiva, el Departamento de Hacienda presentó como prueba testifical a la Lie. Vanya Febles Gordián, Directora de la Oficina de Apelaciones Administrativas del Departamento de Hacienda, mientras que Panificadora presentó a su contable, Sr. Sonio Lloréns Velázquez, y como perito al señor Wilfredo González Vega, contador público autorizado.
El Tribunal de Primera Instancia, Sala Superior de Ponce (Hon. Elba Rosa Rodríguez, J.) determinó que la controversia ante sí giraba en torno a "si son tributables las compras hechas en efectivo que son, a su vez/,/ producto de unas ventas en efectivo que no fueron registradas en los libros de contabilidad del demandante." Sentencia, a ¡la pág. 3. El tribunal a quo resolvió la controversia en la negativa y declaró haber lugar a la demanda de impugnación de deficiencia contributiva.
Dicho foro estimó probado que las compras en efectivo no registradas fueron realizadas con el producto de unas ventas en efectivo que tampoco fueron registradas. Intimó que al adicionar al cómputo del ingreso neto las ventas y las compras omitidas por la misma cantidad, no se afectaba el ingreso neto para fines tributarios, según informado por Panificadora en su planilla de contribución sobre ingresos. Id. Concluyó, a tenor con la prueba testifical y pericial de Panificadora, que la omisión en hacer el asiento en los libros y récords de contabilidad no afectó el cálculo de contribución sobre ingresos en las planillas presentadas y que de haberse hecho el asiento en los libros y récords, se hubiera llegado al mismo resultado. Id.
En sus conclusiones de derecho, el tribunal a quo citó jurisprudencia relativa a que "la ausencia de cuentas y récords [sic] no destruye automáticamente el derecho de reclamar si cualquier otra evidencia admisible y digna de crédito demuestra el reclamo", id., a la pág. 5; y señaló que la presunción de corrección de la determinación administrativa del Secretario de Hacienda había quedado rebatida por Panificadora, por lo que no procedía la deficiencia contributiva impuesta. Id.
No conforme con la sentencia del tribunal a quo, el Procurador General, en representación del Secretario de Hacienda, acude ante nos y aduce como error que el tribunal sentenciador hubiese dejado sin efecto la deficiencia contributiva determinada en contra de Panificadora para los años 1986 al 1988. Este señala que el no conservar libros de contabilidad confiables faculta al Secretario de Hacienda a redeterminar la obligación fiscal del contribuyente para cada año contributivo en controversia; que en el caso de autos, al no registrarse en los libros de contabilidad unas compras en efectivo, el Secretario de Hacienda tuvo que ajustar los mismos para armonizarlos con la realidad económica de la empresa.
*656 El Procurador General expone que existen tres métodos aceptados en el campo del derecho tributario para computar el ingreso tributablé cuando el contribuyente no conserva libros de contabilidad, cuando los mismos '^son inadecuados o cuando desaparecen. Estos métodos son: (1) el aumento en las ganancias netas o incrementos en el capital; (2) el de ventas o entradas brutas (método de porcentaje); y (3) el de depósitos bancarios. Pueblo v. Corales Irizarry, 107 D.P.R. 481 (1978). En el caso de autos, el Secretario de Hacienda utilizó el método de porcentaje o de recómputo de ventas brutas, que consiste en determinar el beneficio tributablé mediante la fijación de un porcentaje generalmente un promedio de beneficios obtenidos por negocios similares sobre el importe de beneficio bruto. El Secretario de Hacienda réCürre a dicho método cuando en circunstancias como en el caso de autos, el contribuyente no refleja con claridad el ingreso, y los inventarios reflejan un papel de importancia en la determinación de los costos de venta y, por ende, del beneficio bruto del negocio.
El Procurador General aduce que el tribunal a quo se basó en dos premisas erróneas al determinar que el efecto neto al vender y comprar por la misma cantidad no afectó el ingreso para fines tributarios relacionado con la contribución sobre* ingresos-.-La primera premisa errónea señalada-es -la relativa a que-si el producto de las ventas o ganancia se reinvierte en compras posteriores, no surge una transacción sujeta a contribución. La segunda premisa errónea aducida es la relativa a que si se vende y se compra por la misma cantidad, no existe beneficio bruto o transacción sujeta a tributación.
Para rebatir la primera premisa errónea, el Procurador General señala que, para fines contributivos, el ingreso se realiza y se reconoce al completarse una transacción, como lo es la venta del producto final; y que el mero hecho de que el ingreso, producto de dicha venta, se utilice o reinvierta para la compra de materia prima no impide su reconocimiento, para fines contributivos.
Luego de exponer numéricamente su contención, el Procurador General llega a cuatro conclusiones. En primer lugar, señala que la omisión en los libros de contabilidad de las compras en efectivo hechas por Panificadora y certificadas.por su suplidor, afectaron directamente la cantidad- dedasventas .reportadas en los libros, resultando en una subvalorización del ingreso neto a ser tributablé;.
En segundo lugar, el Procurador General señala que la aplicación del porcentaje de beneficio bruto o "mark up" a las compras añadidas presume dos cosas: (1) que las compras añadidas o se vendieron o permanecen en el inventario final, cantidad previamente establecida por la contribuyente al realizar el cotejo físico de la mercancía al cierre del año contributivo; y (2) que las compras añadidas se vendieron a un precio mayor al precio que fueron adquiridas.
En tercer lugar, el Procurador General indica que la diferencia entre las ventas y las compras resulta en un beneficio bruto o ganancia y este elemento está sujeto a tributación. Finalmente, concluye que con la venta de los productos comprados surge un ingreso realizado y reconocido, y su reinversión no impide su reconocimiento.
Por su parte, Panificadora expone que el error aducido por el Procurador General se trata realmente de un error en la apreciación de la prueba. Esta señala que el apelante se empeña en aplicar el método de porcentaje de beneficio bruto o de recómputo de ventas brutas a las compras hechas en efectivo para los años 1986 al 1988, lo cual es incorrecto debido a que las planillas de contribución sobre ingresos y los libros de contabilidad para dichos años reflejaban todo el ingreso tributablé.
Panificadora señala, además, que la aplicación de dicho "mark up" correspondería hacerlo a los contribuyentes que dejan de registrar en los libros de contabilidad ventas en efectivo y que retiran el efectivo para uso personal, sin pasar antes por la tributación, en cuyo caso sí aplicaría emplear dicho método de "mark up", ya que los libros de contabilidad no representa la realidad del negocio.
La contención de Panificadora es que las ventas dejadas de registrar fueron reinvertidos en el negocio. Panificadora señala que en el precio de reventa está incluido el beneficio bruto o "mark up ", puesto que el precio de reventa fue pareado contra el costo original, el cual no incluye el costo de la mercancía comprada en efectivo *657 y, por consiguiente, quedó reflejado el beneficio bruto correctamente. Por tal razón, alega Panificadora que si se le aplica otro beneficio bruto o "mark up" a las ventas, dicha corporación estaría tributando dos veces, ya que se estarían sobrevalorando las ventas y presentándolas por una cantidad que no es la real.
Panificadora señala que el informe que sometió su perito dejó establecido que si un negocio no registra en los libros una venta y el producto de dicha venta es reinvertido en el negocio y revendido a un precio mayor, entonces el ingreso tributable no se ve afectado.
Finalmente, Panificadora concuerda con la conclusión del tribunal sentenciador de que no se destruye automáticamente el derecho a reclamar, aun en ausencia de cuentas y récords, si se presenta evidencia admisible y digna de crédito que demuestra su reclamo, como sucedió en el caso de autos.
II
La Ley de Contribuciones Sobre Ingresos, Ley Núm. 91 de 29 de junio de 1954, 13 L.P.R.A. see. 3001 et. seq., define lo que es ingreso en su See. 22, inciso (a), 13 L.P.R.A. see. 3022 (a), de la siguiente manera:
(a)Definición general - "Ingreso bruto" incluye ganancias, beneficios e ingresos derivados de sueldos, jornales o compensación por servicios personales (incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, de cualquier estado de la Unión de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades) de cualquier clase y cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso o del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedades, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias o beneficios e ingresos derivados de cualquier procedencia.
La Ley de Contribuciones dispone en su See. 42, 13 L.P.R.A. see. 3042, el momento específico en que el ingreso debe ser reconocido por el contribuyente. Dicha sección expresa en lo pertinente como sigue:
"El monto de todas las partidas de ingreso bruto será incluido en el ingreso bruto para el año contributivo en que sean recibidas por el contribuyente a menos que, bajo los métodos de contabilidad permitidos bajo la see. 3041A de este título, cualesquiera de dichas partidas deban ser propiamente contabilizadas como de un período distinto...". (Subrayado nuestro.)
A tenor con la See. 42 expuesta anteriormente, como regla general, las partidas de ingresos se incluyen cuando se reciben, y es por vía de excepción que se declaran en otro año. A esos efectos, el método de contabilidad seleccionado por el contribuyente desempeña un papel sustancial al determinar lo que constituye ingreso para fines de la contribución sobre el mismo. La Sec. 41A de la Ley de Contribución Sobre Ingresos, 13 L.P.R.A. see. 3041A (Supl. 1996), dispone en lo pertinente lo siguiente:
(a) Regla General - El ingreso neto será computado de acuerdo con el método de contabilidad regularmente usado por el contribuyente para llevar sus libros.
(b) Excepciones - Si el contribuyente no ha usado método alguno de contabilidad, o si el método usado no reflejase claramente el ingreso, el cómputo será hecho de acuerdo con el método que en opinión del Secretario refleje claramente el ingreso. (Subrayado nuestro).
(c) Métodos Permisibles - Sujeto a las disposiciones de los incisos (a) y (b), un contribuyente podrá computar su ingreso neto bajo cualquiera de los siguientes métodos de contabilidad:

" (1) método de recibido y pagado;

(2) método de acumulación;

*658
(3) cualquier otro método permitido por este subtítulo; o

(4) cualquier combinación de los métodos anteriores permitidos bajo reglamentos prescritos por el Secretario.

(d) Limitación del Uso del Método de Recibido y Pagado - Ño obstante lo dispuesto en el inciso (C), el uso del método de recibido y pagado será permisible únicamente en los siguientes casos.

(1) cuando no sea requerido utilizar inventarias en el negocio; o..."

El inciso (c) anterior señala los dos métodos de contabilidad que usualmente se utilizan en la determinación del ingreso: el método de recibido y pagado, conocido como el "cash basis" y el método de acumulación, conocido como "acrual basis". Bajo el método de recibido y pagado, las partidas de ingreso se declaran en el año en que son realmente recibidas, independientemente de que no se hayan acumulado o devengado. De igual forma, los gastos se reclaman Guando se pagan. Por otro lado, bajo el método de acumulación, los ingresos se declaran cuando se devengan o acumulan, aunque no se hayan recibido y los gastos se reclaman cuando se incurren, aunque no se hayan pagado. Ramos Hermanos v. Secretario de Hacienda, 89 D.P.R. 552 (1963). La ley prohibe el uso del sistema de recibido y pagado cuando es necesario llevar inventarios en el negocio.
Luego de haber expuesto el marco legal, examinemos los hechos del caso de autos. Panificadora es una corporación dedicada a la elaboración de pan y otros productos, empresa que requiere llevar inventarios, por lo que está obligada a utilizar el método de acumulación. Los Principios de Contabilidad Generalmente Aceptados exigen que bajo el método de acumulación, se cumpla estrictamente con el Principio de Pareo de Ingresos y Gastos. Este principio requiere que todos los gastos incurridos para generar determinado ingreso seart registrados en el mismo período en qué se reconoce dicho ingreso. El perito de Panificadora hace referencia al Principio de Pareo en su informe y señala que "[e]s relevante notar que para que se registre un gasto tiene que ocurrir una disminución o expiración de un activo. Por ejemplo, el mero hecho de comprar inventarió- no quiere decir que ese inventario se va a reclamar como'un gasto. Si ese'inventario no se vende; entonces sé presenta como un activo (beneficio probable futuro). Si ese inventario se vende entonces ese activo habrá expirado y, por lo tanto, se debe presentar como un gasto en el mismo período en que se presentaron los ingresos". (Informe del perito Wilfredo González, Apéndice XII, a la pág. 5).
Aunque Panificadora señala que compró la harina con dinero que generó de unas ventas en efectivo, los productos vendidos fueron elaborados con una harina comprada anteriormente. La harina que es objeto de este litigio fue comprada en efectivo posteriormente y, por lo tanto, no es un costo respecto de dichas ventas, debido a que el costo de la harina comprada no será un costo hasta que se venda el producto final que ese costo ayudó a elaborar. Panificadora no incluyó en sus libros la totalidad de las ventas que realizó, por lo que al parear la totalidad de los gastos contra las ventas reflejadas en los libros —las cuales eran menores porque no incluian las ventas en efectivo- tiene como resultado que el beneficio neto sea menor. Por tal razón, no es correcto afirmar que por el hecho de haber invertido en la compra de harina una suma igual a la generada en ventas, Panificadora no devengó un beneficio bruto de dichas ventas. El ingreso se realiza y se reconoce al completarse una transacción, como lo es la venta del producto final. El mero hecho de que el ingreso, producto de dicha venta, se utilice o reinvierta para la compra de materia prima no impide su reconocimiento, para fines contributivos.
El informe pericial presentado por Panificadora concluye que "[n]o hay duda, en este taso, de qué Panificadora de [sic] Sur, Inc. cometió el error de omitir ciertas ventas en efectivo y además dejó también de registrar ciertas compras con ese efectivo. Este es un tipo de error que afecta tanto al Estado de Ingresos y Gastos como también al Estado de Situación, para los años 1986, 1987 y 1988 y es un tipo de error que no se corrige por sí mismo sino que hay que ajustarlo al descubrirlo". (Apéndice XII, a la pág. 34). Dicho informe señala, además, que "al hacer las entradas de ajuste nos encontramos que el efecto de este error en la ganancia neta de la corporación es cero...". Id. Estamos contestes con la posición del Procurador General de que la única explicación lógica y razonable para que el efecto neto sea cero es que Panificadora venda al costo, es decir, que no exista una porción de beneficio en las ventas. Sin embargo, la realidad establecida es que para ese tipo de negocio el beneficio bruto oscilaba entre un 34% y un 38%. Panificadora obviamente no vendía sus productos al *659 costo y asimismo ésta lo admite al señalar que la reventa de la mercancía se hacía por un precio mayor que el costo.
El perito en su informe señala que una situación donde se daría el ajuste que el Departamento de Hacienda quiere aplicarle a Panificadora sería cuando "el inventario que se compró en efectivo no se haya vendido, por lo que ese costo no ha expirado y no se podría reclamar como costo de lo vendido en la planilla de contribución sobre ingresos". (Apéndice XII, a la pág. 32). En su informe, el perito señala que los inventarios finales tanto de materia prima como de materia en proceso y producto terminado en los años en cuestión son por las siguientes cantidadess $19,441 en 1986; $20,957 en 1987; y $24,158 en 1988. Al determinar el porcentaje que representan los inventarios finales del total del inventario disponible para la venta, los porcentajes son de 5.84% para 1986; 6.69% para 1987; y de 7.56% para 1988. Basándose en dichos porcentajes, el perito indica en su informe que el porcentaje es muy bajo, lo que es indicativo de que este inventario se procesa y se vende rápido, por lo que con toda probabilidad ese inventario expiró y por tanto, es un gasto que se puede reclamar en la planilla. Id.
No nos convence dicho razonamiento, puesto que al reflejarse en los libros que Panificadora tenía inventario final al cierre del año contributivo, éste no nos ha puesto en condiciones para concluir que toda la harina que Panificadora compró en efectivo y que no reflejó en sus libros de contabilidad, la compró con suficiente antelación como para que todos los productos que se elaboraran con dicha harina se hubiesen vendido en el mismo período para el cual se reclamó el costo total de la misma. Es decir, si el beneficio bruto de las ventas en efectivo no se determina hasta que se hayan revendido los productos elaborados con la harina comprada con dicho efectivo, si queda inventario de harina comprada en efectivo o productos elaborados con dicha harina que no se vendieron dentro del año contributivo, no se puede deducir como gasto el costo total de la harina, puesto que aún se cuenta con inventario final en los libros.
Ante el Tribunal de Primera Instancia no desfiló prueba de que Panificadora hubiese vendido todos los productos elaborados con la harina que compró en efectivo en ese mismo año y así hubiese reflejado el impacto de dichas compras en las ventas realizadas. De hecho, si comparamos la cantidad de la harina comprada en efectivo con la cantidad de inventario final al cierre de los años contributivos notamos que las sumas son comparables en los tres años. Así, vemos que en 1986 Panificadora compró harina en efectivo por la suma de $29,685.00 y que su inventario final ascendió a $19,441.00; en 1987, la harina comprada en efectivo fue de $26,569.50 y el inventario final ascendió a $20,957.00; y en 1988, la harina comprada en efectivo fue de $46,345.25 y el inventario final ascendió a $24,158. (Apéndice XII, a la pág. 32.)
No podemos acoger la posición de Panificadora de que al no haberse reflejado en los libros el costo de la harina comprada en efectivo, la reventa causa que el ingreso tributable quede reflejado por la cantidad correcta, tributando así lo que antes no había tributado. Panificadora debió haber tributado el beneficio bruto generado por dichas ventas en efectivo en el año contributivo en que generó dicho ingreso, luego de haber pareado el ingreso con los gastos correspondientes, y no cuando vendió el producto final elaborado con la harina comprada en efectivo.
De lo expuesto anteriormente, puede concluirse que el tribunal de primera instancia cometió error en la apreciación de la prueba al determinar que no procedía la deficiencia contributiva determinada por el Departamento de Hacienda, y al concluir que las ventas y compras hechas en efectivo por Panificadora y no reflejadas en sus libros de contabilidad no alteraron el beneficio bruto obtenido y, por ende, la contribución sobre ingresos que le correspondía pagar en los años en controversia. Es doctrina reiterada que en lo que respecta a prueba documental y pericial, este Tribunal está en igualdad de condiciones que el tribunal de primera instancia al evaluar la prueba. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 450 (1985); López v. Hosp. Presbiteriano, Inc., 107 D.P.R. 197, 204 (1978); y González Rivera v. Junta Retiro Para Maestros, 93 D.P.R. 70, 78 (1966).
Como vimos en el marco legal, todo contribuyente viene obligado a informar o tributar por los ingresos obtenidos durante cada año contributivo. Los libros de contabilidad de los negocios deben reflejar la realidad de los ingresos recibidos, puesto que si los asientos en los libros confligen con los hechos ciertos, estos últimos prevalecerán en la determinación del ingreso tributable, ya que la tributación descansa sobre realidades y no en *660 meras teorías o ficciones. Viñas v. Secretario, 97 D.P.R. 282, 288-89 (1969); D. Velasco & Co. v. Sancho Bonet, Tesorero, 51 D.P.R. 56, 58 (1937).
La Sec. 41A, inciso (b) de la Ley Núm. 91, supra, dispone que si un contribuyente no llevare libros de contabilidad, o si el sistema utilizado por éste no refleja claramente su ingreso, el Secretario de Hacienda estará facultado a utilizar el método que, en su opinión, refleje claramente el ingreso. En el caso de autos, los libros de contabilidad de Panificadora no reflejan correctamente la realidad del negocio, ya que sólo aparecen registradas las compras pagadas mediante cheque. De igual forma, las compras reportadas en las planillas de contribución sobre ingresos corresponden únicamente a las compras efectuadas mediante cheque. Ante dicha situación, el Secretario de Hacienda estaba autorizado a aplicar el método de porcentaje a las compras hechas en efectivo por Panificadora y no reflejadas en los libros de contabilidad y, al determinar los ingresos dejados de tributar, con la consiguiente imputación de deficiencia contributiva correspondiente.
Con estos antecedentes, se revoca la sentencia apelada.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 96 DTA163
1. El "mark-up" es el porcentaje de beneficio bruto .y se obtiene dividiendo el beneficio bruto entre las ventas.