Martínez Torres, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El Demandante-Apelante, Maximino Rosa Román, sufrió un accidente el 3 de diciembre de 1985, al caer en un hoyo mientras caminaba, para evitar ser impactado por un automóvil. Fue evaluado y tratado en el Hospital de San Sebastián el mismo día y referido al Hospital Sub-Regional de Aguadilla. Al día siguiente, el Sr. Rosa Román fue evaluado por personal médico del Hospital . Sub-Regional de Aguadilla, quienes ordenaron radiografías. El Dr. Eduardo Figueroa Maldonado, radiólogo, leyó las placas.
*835 De dicha lectura se desprende que las mismas fueron interpretadas minuciosamente, ya que el co-demandado-apelado, Figueroa Maldonado, hizo constar lo siguiente:
"De las vistas disponibles no se identificó fractura o dislocación. Hay evidencia de un pantopaque residual en el cerebro y en la región lumbar, aparentemente de un myelograma anterior. Se nota una fractura vieja en la clavícula derecha. Cambios degenerativos fueron observados en la espina." [Traducción del Tribunal de Primera Instancia.]
Rosa Román fue dado de alta del Hospital Sub-Regional de Aguadilla el mismo 4 de diciembre de 1986. Dos días después, según éste testificó, tuvo que ir al Centro de Diagnóstico y Tratamiento de San Sebastián porque no aguantaba el dolor. Indicó en juicio que un doctor de apellido García le recetó unas pastillas y le dio seguimiento una o dos veces en semana (transcripción, págs. 65-77, 99-102). No se presentó prueba para desmentir el relato del Sr. Rosa Román. Además, el 2 de enero de 1986, Rosa Román visitó las facilidades del Hospital Sub-Regional de Aguadilla en busca de tratamiento adicional.
Según se desprende de los récords médicos, como Rosa Román no mejoraba con el tratamiento y terapias a las que fue sometido, el 23 de abril de 1986 fue evaluado en las facilidades del Hospital Sub-Regional de Aguadilla, se le hizo un examen físico y se le ordenaron nuevas radiografías. Dichas radiografías fueron evaluadas y se diagnosticó fractura con anterolístesis moderada (desplazamiento) de la vértebra C-6 sobre la C-7 (transcripción, pág. 177).
El 14 de marzo de 1986, Rosa Román fue evaluado nuevamente por personal médico del Hospital Sub-Regional de Aguadilla y referido al Hospital Sub-Regional de Mayaguez para consulta con un ortopeda. El 19 de mayo de 1986, fue ingresado en el Hospital Sub-Regional de Mayaguez para tratamiento en tracción por la fractura en C-6 y C-7. El 29 de mayo de 1986, el paciente fue intervenido quirúrgicamente para realizarle una fusión espinal posterior de las vértebras cervicales (véase Apéndice del Escrito de Apelación, págs. 135-42). El Demandante-Apelante, Rosa Román, convaleció sin complicaciones y fue dado de alta en condiciones excelentes y sin dificultad neurológica el día 6 de junio de 1986.
El 3 diciembre del mismo año, Rosa Román radicó demanda contra el Estado Libre Asociado de Puerto Rico; el Municipio de San Sebastián; la Administración del Fondo de Compensación al Paciente, y varios doctores y compañías de nombre desconocido. El 15 de mayo de 1991, Rosa Román presentó una moción sobre sustitución de demandado de nombre desconocido, conjuntamente con una demanda enmendada. En dicha sustitución, incluyó como parte al Dr. Figueroa Maldonado, alegando impericia. Alegó el Demandante-Apelante, Rosa Román, que actualmente continúa bajo tratamiento médico y que padece de una incapacidad total y permanente.
Los co-demandados, Dr. Eduardo Figueroa Maldonado y el Estado Libre Asociado de Puerto Rico, contestaron la demanda, y negaron las alegaciones de negligencia y de impericia profesional. Las partes hicieron uso extensivo de los mecanismos de descubrimiento de prueba, luego de lo cual se celebró la conferencia con antelación al juicio. En dicha conferencia ambas partes anunciaron sus respectivas pruebas testifical y documental. La parte demandante anunció como médicos de tratamiento a los doctores Jorge Potter (neurocirujano) y Carlos Pérez Cardona (cirujano ortopeda). No anunció prueba pericial para probar las imputaciones de negligencia contra los co-demandados, Dr. Eduardo Figueroa Maldonado (radiólogo) y el Estado Libre Asociado de Puerto Rico.
La vista en su fondo tuvo lugar el día 5 de abril de 1994. Durante dicha vista las partes presentaron prueba documental por estipulación, consistente en la autenticidad, pero no el contenido, de los récords médicos del Centro de Diagnóstico y Tratamiento (CDT) de San Sebastián, del Hospital Regional de Aguadilla, y dos récords del Centro Médico de Mayaguez y Clínicas Externas. La prueba de la parte Demandante-Apelante consistió en los testimonios del Sr. Rosa Román y de los doctores Jorge Potter y Pérez Cardona, médicos que le brindaron tratamiento al demandante. Los doctores Potter y Pérez Cardona testificaron no haber visto las radiografías que se tomaron en el Hospital Sub-Regional de Aguadilla y leídas por el radiólogo Figueroa Maldonado. Ambos médicos testificaron que existen fracturas sin desplazamientos que no se pueden ver en estudios radiológicos. Además, el Dr. Pérez Cardona testificó que existen fracturas que no suelen reflejarse en exámenes *836 radiológicos, como ocurrió con el señor Rosa Román, y que la intervención quirúrgica que se le programó inicialmente no se debió a un diagnóstico de fractura de la lámina C-6, ya que la misma no había sido reflejada en los exámenes radiológicos previos que se le efectuaron al demandante Rosa Román (transcripción, pág. 195). Sólo se había reflejado una fractura comprensiva, a saber "una fractura donde el cuerpo de la vértebra se achata un poco....". Transcripción, pág. 135. Según el propio perito del Demandante-Apelante, el doctor Pérez Cardona, eso ocurre cuando las vértebras se salen de sitio, pero "nosotros verdaderamente a eso no le damos tanta importancia, o sea, lo que es verdaderamente importante es poner en sitio la columna otra vez.... En término del tratamiento que nosotros le damos a ese tipo de fractura, no le hacemos nada." Id., pág. 136.
Luego de aquilatar la pmeba presentada por ambas partes, el Tribunal de Primera Instancia, Sala Superior de Aguadilla (Hon. Yamil Suárez Marchán, Juez) desestimó la demanda el 31 de mayo de 1995, por entender que no se probó la negligencia de los demandados-apelados. El Demandante-Apelante presentó oportunamente una moción de determinaciones de hechos adicionales, que fue declarada sin lugar el 22 de octubre de 1996.
Rosa Román apeló ante nos de la sentencia emitida por el Tribunal de Primera Instancia. Plantea, en síntesis, que las determinaciones de hechos no están sostenidas por la prueba. Eventualmente, autorizamos la presentación de una transcripción del juicio y de alegatos suplementarios referentes a ésta. El co-demandado-apelado, Dr. Figueroa Maldonado, presentó también su alegato en los méritos, por lo que estamos en posición para resolver.
En verdad, como concluyó el ilustrado foro de instancia, el Demandante-Apelante Rosa Román no presentó pmeba que permitiera tan siquiera inferir que el diagnóstico o lectura de las radiografías realizadas por el Dr. Eduardo Figueroa Maldonado fuese uno incorrecto y que el cuidado brindado por el personal del Hospital Sub-Regional de Aguadilla no se ajustase a las exigencias del cuidado médico-hospitalario exigido en este tipo de circunstancias. No presentó prueba para establecer cuáles eran las normas de cuidado mínimo.
La pmeba tan sólo demostró que el demandante sufrió un accidente, que fue evaluado por personal médico del Hospital Sub-Regional de Aguadilla, que la interpretación de las radiografías del 5 de diciembre de 1986 fueron reportadas negativas, y que cuatro meses luego de ocurrido el accidente, y como parte de los preparativos para una cirugía menor, al paciente se le diagnosticó fractura con desplazamiento en las vértebras C-6 y C-7, por lo que tuvo que ser sometido a una intervención quirúrgica mayor.
En casos de impericia profesional médica, la mera presentación de prueba, de por sí, no establece un caso prima facie de responsabilidad contra el médico. Existe una presunción que establece la corrección de las actuaciones de los médicos, la cual tiene que ser rebatida por la parte demandante mediante pmeba suficiente para sostener las alegaciones específicas de negligencia contenidas en la demanda, salvo que la falta de cuidado sea tan evidente como para inferirla. Medina Santiago v. Vélez, 120 D.P.R. 380, 386 (1988); Ríos Ruiz v. Mark, 119 D.P.R. 816, 821 (1987). Como señaló el Tribunal Supremo en Vda. de López v. E.L.A., 104 D.P.R. 178, 183 (1975):
"Es norma reiterada por este Tribunal en casos de responsabilidad profesional médica, la presunción de que el médico ha observado un grado razonable de cuidado y atención en la administración de tratamiento médico y que los exámenes practicados al paciente han sido adecuados. Corresponde al reclamante controvertir tal presunción con prueba médica que demuestre algo más que una mera posibilidad de que el daño se debió al incumplimiento por parte del médico de su obligación profesional. Si de la evidencia surgen varias causas probables del daño, no puede imponérsele responsabilidad al médico, a menos que del examen de la totalidad de la prueba surja que su actuación negligente es la que con mayores probabilidades tiene de haber causado el daño. Reyes v. Phoenix Assurance Co., 100 D.P.R. 871 (1972), cita precisa a la pág. 876; Rivera v. E.L.A., 99 D.P.R. 890 (1971), cita precisa a las págs. 898-99; Ramos Orengo v. La Capital, 88 D.P.R. 315 (1963), cita precisa a la pág. 328; Sáez v. Municipio de Ponce, 84 D.P.R. 535 (1962), cita precisa a las págs. 543-44; Rivera v. Dunscombe, 73 D.P.R. 819 (1952), cita precisa a las págs. 838-839....".
La parte Demandante-Apelante no puso en condición al tribunal de instancia para concluir que el *837 factor que con mayor probabilidad causó o agravó el daño fue la lectura errónea de las radiografías leídas por el co-demandado, Dr. Eduardo Figueroa Maldonado. Rosa Román no presentó las radiografías leídas por dicho médico ni presentó prueba pericial para sustentar que dichas radiografías no fueron interpretadas correctamente. En otras palabras, no estableció que mediara negligencia médica.
El Demandante-Apelante, Rosa Román, no presentó prueba alguna para controvertir la presunción existente a los efectos de que el Dr. Eduardo Figueroa Maldonado y el Hospital Sub-Regional de Aguadilla brindaron al demandante un tratamiento de calidad. El hecho de que un paciente haya sufrido un daño o que el tratamiento no haya tenido éxito no crea ninguna presunción de negligencia por parte del médico. La parte demandante no puede descansar para rebatir esta presunción en una mera posibilidad de que el daño se debió al incumplimiento de parte del médico de su obligación profesional. La relación de causalidad no puede establecerse a base de una mera especulación o conjetura. Ramos Robles v. García Vicario, opinión de 20 de diciembre de 1993, 93 J.T.S. 167, pág. 11397; Rodríguez Crespo v. Hernández, 121 D.P.R. 633, 650 (1988); Vda. de López v. E.L.A., supra.
De igual forma, se ha reiterado que una vez desfilada la prueba, si la evidencia señala la existencia de múltiples causas no puede imponérsele responsabilidad al médico a menos que del conjunto de la evidencia surja que con mayor probabilidad la actuación negligente del galeno fue la causa del daño. Ramos Robles v. García Vicario, supra; Reyes v. Phoenix Assurance Co., 100 D.P.R. 871, 876 (1973); Rivera v. E.L.A., 99 D.P.R. 890, 898-99 (1971). Véase también la Regla 14 de Evidencia.
La parte Demandante-Apelante no presentó prueba pericial para probar las imputaciones de negligencia contra cada uno de los co-demandados. Por el contrario, sus peritos establecieron que las fracturas sufridas por Rosa Román fueron unas que, por lo general, no se reflejan en radiografías simples. Además, surge de la lectura de las radiografías interpretadas el 5 de diciembre de 1985 que las mismas fueron leídas minuciosamente. Si bien es cierto que hubiera sido mejor práctica que el doctor Figueroa Maldonado hiciera una lectura individual de cada radiografía, no podemos inferir de esa omisión, en forma automática, que la lectura fue incorrecta. Para ello necesitaríamos ver las placas.
El Demandante-Apelante enfatiza que a pesar que las solicitó y que obtuvo una orden a esos efectos, las radiografías tomadas en el Hospital Sub-Regional de Aguadilla nunca aparecieron. Esa anomalía, aunque lamentable y reprochable, no tiene las consecuencias que el demandante-apelante quiere atribuirle.
La Regla 69(A) de Evidencia establece que para probar el contenido de un escrito, grabación o fotografía, se requiere la presentación del original. El principal motivo para crear esta regla fue tratar de evitar la posibilidad de que se presentara otra evidencia que no reflejase fielmente el contenido del documento, grabación o fotografía que se pretendía utilizar. Véase E.L. Chiesa, Práctica Procesal Puertorriqueña: Evidencia, Publicaciones J.T.S., San Juan, 1986, pág. 450. En el caso que nos ocupa está en controversia el contenido de unas radiografías que se le tomaron al Demandante-Apelante el 4 de diciembre de 1985 en las facilidades del Hospital Sub-Regional de Aguadilla. La controversia medular de este caso gira alrededor de un alegado error de negligencia en el diagnóstico, o una omisión de diagnóstico apropiado que da margen a responsabilidad profesional. La mejor evidencia para probar las alegaciones de negligencia lo es precisamente las radiografías que se le tomaron al paciente en el Hospital Sub-Regional de Aguadilla. En vista de que dichas radiografías no aparecen, la evidencia secundaria es la interpretación o lectura que se le hizo a las placas, máxime cuando dichas radiografías fueron evaluadas por el médico de Sala de Emergencia que las interpretó como negativas y procedió a dar de alta al paciente. En ausencia de las placas, su lectura es la única evidencia admisible. Regla 70 de Evidencia; Pueblo v. Echevarría Rodríguez, Opinión de 25 de abril de 1991, 91 J.T.S. 43, pág. 8572; Pueblo v. Corales Irizarry, 107 D.P.R. 481, 488 (1978). El demandante-apelante Rosa Román no presentó prueba pericial para tratar de establecer la posibilidad de que las radiografías no fueron interpretadas adecuadamente. Cualquier conclusión nuestra a esos efectos sería mera conjetura, contraria a la presunción de regularidad en el tratamiento y diagnóstico médico que prevalece en esta jurisdicción. "La ocurrencia del accidente por sí sólo no constituye la prueba necesaria para la negligencia.... [E]l fracaso del tratamiento prescrito o en el diagnóstico no constituye por sí una actuación negligente." Medina Santiago v. Vélez, supra, pág. 385.
*838 Por último, el hecho de que el tribunal entrara a especular si Rosa Román sufrió o no otro accidente como consecuencia de ingerir alcohol no derrota la corrección de su dictamen. Adviértase que la apelación se da contra la sentencia y no contra sus fundamentos. Piñeiro v. International Air Services of P.R., Inc., Opinión de 18 de marzo de 1996, 96 J.T.S. 39, pág. 845; Vélez Rodríguez v. Amaro Cora, Opinión de 10 de abril de 1995, 95 J.T.S. 38.
Así, pues, por todo lo aquí expuesto, se confirma la sentencia objeto de este recurso de apelación.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General